UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA

CLERKS OFFICE
Atlanta

2020

GATEN, Clerk
Deputy Clerk

| | |
|---|---|
| GAYLE E. WOODCOCK | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. _____ |
| | ) |
| NEENAH PAPER, INC | ) |
| (nka Neenah, Inc.) | ) **1:20-CV-0068** |
| | ) |
| Defendant. | ) |

## COMPLAINT

The Plaintiff, Gayle E. Woodcock, brings this Complaint against the
Defendant, Neenah Paper, Inc. (nka Neenah, Inc.), to recover benefits under the
Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. §§ 1001
et. seq.) and breach of contract as follows:

### THE PARTIES

1) Plaintiff, Gayle E. Woodcock ("Woodcock"), is a citizen of the State of
   Vermont, United States, with her residence at 69 Toby Hill Road, South
   Newfane, Vermont 05351;  802-881-9014;
   galeewoodcock@rocketmail.com.

1

2) Defendant, Neenah, Inc. (nka Neenah, Inc.) ("Neenah"), a Delaware company, operates in the United States with its headquarters at 3460 Preston Ridge Road, Suite 600, Alpharetta, Georgia 30005. Neenah is qualified to and does business in Georgia and Vermont.

3) Defendant Neenah is an "employer" within the meaning of ERISA as amended.

4) The Neenah Severance Pay Plan of Defendant Neenah is an employee welfare benefit plan within the meaning of Section 3(1) of ERISA, as amended.

5) Defendant Neenah functions as the "Plan Administrator" for the Neenah Severance Pay Plan within the meaning of ERISA, as amended.  Trough the "Plan Administrative Committee," the Defendant Neenah functions as a fiduciary for the Neenah Severance Pay Plan within the meaning of ERISA, as amended.

## JURISDICTION AND VENUE

6) Plaintiff invokes the jurisdiction of this Court pursuant to Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001 et. seq.) as amended.

7) Venue is proper in this Court as the Defendant resides and the Neenah Severance Pay Plan (the "Plan") is administered from this District. Moreover, the Plan (§6.3 - Applicable Law) specifies the Federal Court "located in or embracing ... Fulton County, Georgia."

## FACTUAL ALLEGATIONS

8) Neenah originally established the Plan, as the Neenah Paper Severance Pay Plan, effective December 1, 2004, and was last amended and restated as the Neenah Severance Pay Plan, on January 1, 2009 (the "Plan"). (Attached and incorporated herein as Exhibit A).

9) The effective date of the amendment and restatement of the Plan is April 1, 2017. The original effective date of the Plan is December 1, 2004. (Plan § 1.2).

10) The purpose of the Plan is to provide temporary income replacement to Eligible Employees who are *involuntarily terminated* by Neenah. (Plan § 1.4).

11) Effective August 1, 2015, a subsidiary of the Neenah acquired all the outstanding equity interests of ASP Fibermark, LLC ("Fibermark"). In connection with that transaction, otherwise eligible employees of Fibermark North America, LLC (formally known as Fibermark North America, Inc.)

3

became eligible for the Plan effective August 1, 2016.  This acquisition
included the Brattleboro, Vermont facility.

12)      Fibermark (reincorporated upon acquisition as Neenah Northeast,
LLC) was a New Participating Employer under the Plan.  (Plan § 2.14, §
2.16, and Exhibit A.)

13)      On July 31, 2015 Woodcock, a financial manager supervising four
facilities, was an at will employee in good standing of Fibermark. Upon
August 1, 2015 she became a full-time employee of Neenah with the same
responsibilities.

14)      Upon Woodcock's employment with Neenah she became a Participate
and Eligible employee of the Plan. (Plan § 2.15 and § 2.8, respectively).

15)      At the time of Woodcock's employment with Neenah she had
twenty-four (24) years of employment with Fibermark. Pursuant to the Plan
(Plan § 2.21 – Prior Employer Service) she was provided a twenty-four (24)
year Prior Employer Service Credit for each year of her previous
employment at Fibermark. (Plan § 2.25(C) – Years of Service).

16)      The amount of severance payable under the Plan is equal to one (1)
week of Base Salary per Year of Service to a maximum of twenty-six (26)
weeks of Base Salary.  (Plan §4.1(A)).  Therefore, upon her involuntary

termination on December 31, 2018, Woodcock was eligible and qualified for twenty-six (26) weeks of Base Salary severance pay.

17)       Each Participant who has a Termination of Employment as a result of an involuntary termination by a Participating Employer "*shall* receive Severance Pay". (Plan §3.2).

18)       Neenah pays such Severance Pay according to §4.2(C): "Severance Pay shall be paid as a lump sum cash payment made as soon as practicable following a Participant's Termination Date, but no more than the fifteenth (15th) day of the third month thereafter."

19)       On information and belief, Neenah pays severance benefits from its assets.

20)       Upon involuntary termination of Woodcock, her severance pay could *only* be denied if one of the following conditions existed of which *none applied* to Woodcock (Plan §3.2):

(A)      Woodcock's employment was terminated for cause;

(B)      Woodcock's employment was terminated during a period in which she was not actively working for more than 25 weeks;

(C)      Woodcock voluntarily quit or retired;

(D)      Woodcock died;

(E)     Woodcock's employment was terminated as part of a Group

Termination for which Neenah offered Woodcock a *special severance*

*package* in connection with that Group Termination; or

(F)     Woodcock was offered employment on similar terms and conditions

by another *Participating Employer* as listed in Exhibit A of the Plan.

21)     On information and belief, Neenah decided in late 2017 or early 2018
that it would sell the Brattleboro, Vermont facility.

22)     In May 2018, Renee Schwartz, Vice President of Operations – Fine
Paper, informed Woodcock and others that Neenah intended to sell or close
the Brattleboro, Vermont facility and represented to Woodock she would be
paid twenty-six (26) weeks of severance and three (3) weeks of earned but
unused vacation pay if Woodcock agreed to work until December 31, 2018,

23)     On information and belief Neenah, by making the Schwartz offer,
knew a potential sale of the Brattleboro facility would be enhanced by
including an experience work force.

24)     On information and belief, the sale of Brattleboro did not go well and
Neenah concluded it must shut down the Brattleboro facility and terminate
the employees working there, including Woodcock.

25)     On October 25, 2018 Matthew Duncan, Senior Vice President and

Renee Schwartz issued a Worker Adjustment and Retraining Act ("WARN")

Notice.

26)     On information and belief, Neenah needed a trained work force to

continue to operate and profit from the Brattleboro facility until the shut-

down date of December 31, 2018.  Furthermore, Neenah retained a hope that

the Brattleboro facility could be sold.  Additionally, Neenah depended upon

Woodcock to continue her work and therefore impressed upon her not to

take her earned vacation. Therefore, Duncan specifically and directly,

restated and confirmed to Woodcock if she agreed to work until December

31, 2018 she would be paid twenty-six weeks of severance pay and three (3)

weeks of earned by unused vacation pay.  At no time were these promises

rescinded.

27)     Woodcock reasonably relied upon Duncan's promises and did not

take her earned vacation.

28)     At all times, Woodcock was willing and able to continue to work for

Neenah after December 31, 2018.

29)     On information and belief, in mid to late November 2018 Neenah was

approached by a group of investors who offered to purchase certain assets of

the Brattleboro facility.  Subsequently, Neenah agreed to and did sell these

assets to these investors, incorporated as Long Falls Paperboard, LLC

("Long Falls") on December 31, 2018.

30)     Long Falls is not a "Participating Employer" or any of its affiliates

under the Plan.

31)     Neenah, as part of a Group Termination (Plan §2.1 2(A), *involuntarily*

*terminated* Woodcock on December 31, 2018.

32)     At no time did Neenah offer Woodcock a "special severance

package."

33)     After December 31, 2018,  Woodcock did not provide any services to

Neenah, and Neenah exerted no control or direction over Woodcock

regarding any service she was providing.

34)     After December 31, 2018, Woodcock was no longer on the payroll of

Neenah.

35)     On January 2, 2019 Woodcock accepted an accounting position with

Long Falls.


## FIRST CLAIM FOR RELIEF:  Severance Pay

36)     Neenah did not pay Woodcock severance.

37)     Under the Plan Neenah was required to pay Woodcock twenty-six

(26) weeks of Base Pay Severance Pay.

38)     Pursuant to the Plan §5.8 (B), Woodcock filed a Claim for severance on July 29, 2019 with Neenah.   A copy of her Claim is attached and incorporated herein as Exbibit B.

39)     Neenah denied Woodcock's Claim on September 3, 2019.  A copy of Neenah's initial Denial is attached and incorporated herein as Exbibit C.

40)     Pursuant to the Plan §5.8 (C)(2) Woodcock filed an Appeal on October 2, 2019. A copy of her Appeal is attached and incorporated herein as Exbibit D.

41)     Neenah denied Woodcock's Appeal on November 25, 2019. A copy of Neenah's Appeal Denial is attached and incorporated herein as Exbibit E

42)     Under the Plan Woodcock is entitled to twenty-six (26) weeks of Base Salary Severance Pay and thereby has been damaged.

## SECOND CLAIM FOR RELIEF: Vacation Pay

43)     Neenah did not pay Woodcock three (3) weeks of earned, but unpaid vacation pay.

44)     By promising to pay Woodcock her earned by unused vacation pay, if she, in turn, continued to work for Neenah until December 31, 2018 the parties entered into a unilateral contract.

9

45)     Neenah breached its contractual agreement to Woodcock by not

paying her three (3) weeks of earned but unused vacation pay and

Woodcock has been damaged.

## PRAYERS FOR RELIEF

WHEREAS, the Plaintiff prays that this Court:

A.  Order Neenah pay Woodcock twenty-six (26) weeks of Base Pay
    Severance.

B.  Order Neenah pay Woodcock three (3) weeks of earned but unused
    vacation pay.

C. Order Neenah to pay interest, attorney fees, costs and expenses.

D. Award such other equitable and remedial relief as the Court may deem
   appropriate.

### Certification

Under Federal Rule of Civil Procedure 11, by signing below, I certify

to the best of my knowledge, information, and belief that this complaint: (1)

is not being presented for an improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation; (2) is

supported by existing law or by a nonfrivolous argument for extending,

modifying, or reversing existing law; (3) the factual contentions have

evidentiary support or, if specifically so identified, will likely have

evidentiary support after a reasonable opportunity for further investigation or

discovery; and (4) the complaint otherwise complies with the requirements

of Rule 11.

Respectfully submitted,

DATED:  December 23, 2019

Gayle E. Woodcock
69 Toby Hill Road
South Newfane, Vermont 05351
802-881-9014
galyewoodcock@rocketmail.com

# EXHIBIT A

# NEENAH SEVERANCE PAY PLAN



**NEENAH**

**SEVERANCE PAY PLAN**

(As Amended and Restated Effective April 1, 2017)

# NEENAH SEVERANCE PAY PLAN

## Table of Contents

Page

**ARTICLE I NAME, PURPOSE AND EFFECTIVE DATE OF PLAN** ................................. 1

    1.1    Amendment and Restatement of the Plan ............................................. 1

    1.2    Background ........................................................................... 1

    1.3    Type of Plan .......................................................................... 1

    1.4    Purpose of the Plan ................................................................. 1

    1.5    Effective Date ........................................................................ 1

**ARTICLE II DEFINITIONS AND CONSTRUCTION** ......................................... 1

    2.1    Affiliate .............................................................................. 1

    2.2    Base Salary ........................................................................... 2

    2.3    Board ................................................................................. 2

    2.4    Cause ................................................................................. 2

    2.5    Code .................................................................................. 3

    2.6    Company .............................................................................. 3

    2.7    Effective Date ........................................................................ 3

    2.8    Eligible Employee .................................................................... 3

    2.9    Employee ............................................................................. 3

    2.10    Employer ............................................................................ 3

    2.11    ERISA ............................................................................... 3

    2.12    Group Termination ................................................................. 3

    2.13    Officer .............................................................................. 4

    2.14    New Participating Employer ....................................................... 4

Table of Contents

(continued)

Page

2.15   Participant ............................................................................................................. 4

2.16   Participating Employer ........................................................................................... 4

2.17   Plan ......................................................................................................................... 4

2.18   Plan Administrative Committee .............................................................................. 4

2.19   Plan Administrator .................................................................................................. 4

2.20   Plan Year ................................................................................................................. 4

2.21   Prior Employer Service Credit ............................................................................... 4

2.22   Severance Pay ......................................................................................................... 4

2.23   Termination Date .................................................................................................... 5

2.24   Termination of Employment ................................................................................... 5

2.25   Years of Service ...................................................................................................... 5

2.26   Construction ............................................................................................................ 5

**ARTICLE III ELIGIBILITY AND PARTICIPATION** ............................................................ **5**

3.1   Participation ............................................................................................................. 5

3.2   Eligibility for Severance Pay .................................................................................. 6

3.3   Duration ................................................................................................................... 6

3.4   Severance Agreement and Release .......................................................................... 6

**ARTICLE IV SEVERANCE BENEFITS** ................................................................................. **7**

4.1   Severance Pay .......................................................................................................... 7

4.2   Funding .................................................................................................................... 8

4.3   Withholding ............................................................................................................. 8

**ARTICLE V PLAN ADMINISTRATIVE COMMITTEE** ..................................................... **8**

5.1   Plan Administrative Committee ............................................................................... 8

Table of Contents

(continued)

Page

5.2 Membership ..................................................................................................... 8

5.3 Powers ............................................................................................................... 8

5.4 Organization and Procedures ............................................................................ 9

5.5 Rules and Decisions .......................................................................................... 9

5.6 Authorization of Payments ............................................................................... 9

5.7 Books and Records ............................................................................................ 9

5.8 Claims Procedures ............................................................................................ 9

5.9 Plan Administrative Committee Discretion ..................................................... 11

5.10 Plan Amendments ............................................................................................ 11

5.11 Delegation of Duties ........................................................................................ 11

5.12 Plan Administrator ........................................................................................... 12

**ARTICLE VI LIMITATIONS AND LIABILITIES ............................................ 12**

6.1 No Guarantee of Employment ......................................................................... 12

6.2 Nonalienation ................................................................................................... 12

6.3 Applicable Law ................................................................................................ 12

6.4 Notice ............................................................................................................... 12

6.5 Service of Process ............................................................................................ 13

6.6 No Guarantee of Tax Consequences ................................................................ 13

6.7 Limitation of Liability ...................................................................................... 13

6.8 Indemnification of the Plan Administrative Committee ................................... 13

6.9 Termination and Amendment of the Plan ........................................................ 13

**APPENDIX A PARTICIPATING EMPLOYERS ................................................ 15**

NEENAH SEVERANCE PAY PLAN

## ARTICLE I

### NAME, PURPOSE AND EFFECTIVE DATE OF PLAN

1.1     <u>Amendment and Restatement of the Plan</u>.  Neenah Paper, Inc. (the "Company") hereby amends and restates its severance plan for its Eligible Employees, to be known as the Neenah Severance Pay Plan (formerly known as the Neenah Paper Severance Pay Plan) (the "Plan"), as set forth in this document.

1.2     <u>Background</u>.  The Plan was originally established effective December 1, 2004, and was last amended and restated as of January 1, 2009.

Effective August 1, 2015, a subsidiary of the Company acquired all the outstanding equity interests of ASP Fibermark, LLC.  In connection with that transaction, otherwise eligible employees of Fibermark North America, LLC (formerly known as Fibermark North America, Inc.) became eligible for the Plan effective August 1, 2016.

1.3     <u>Type of Plan</u>.  The Plan is intended to qualify as an employee welfare benefit plan within the meaning of Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended, and is to be interpreted in a manner consistent with the requirements of that section.

1.4     <u>Purpose of the Plan</u>.  The purpose of the Plan is to provide temporary income replacement to Eligible Employees who are involuntarily terminated by the Company.

1.5     <u>Effective Date</u>.  The effective date of this amendment and restatement is April 1, 2017. The original effective date of the Plan is December 1, 2004.

## ARTICLE II

### DEFINITIONS AND CONSTRUCTION

When the following words and phrases appear in this Plan, they shall have the respective meanings set forth below unless the context clearly indicates otherwise:

2.1     <u>Affiliate</u>.  The Company and any company, person or organization which, on the date of determination, (A) is a member of a controlled group of corporations (as defined in Code section 414(b)) which includes the Company; (B) is a trade or business (whether or not incorporated) which controls, is controlled by or is under common control with (within the meaning of Code section 414(c)) the Company; (C) is a member of an affiliated service group (as defined in Code section 414(m)) which includes the Company; or (D) is otherwise required to be aggregated with the Company pursuant to Code section 414(o) and regulations promulgated thereunder.

2.2     Base Salary. The base salary of an Eligible Employee at his or her stated hourly, weekly, monthly or annual rate on his Termination Date. Base Salary does not include overtime pay or other remuneration. The method of determining an Eligible Employee's Base Salary shall be determined by the Plan Administrative Committee in the event of any question related to Base Salary.

2.3     Board. The Board of Directors of the Company.

2.4     Cause. A Participant engaging in any of the following activities:

    (A)     Willful failure to perform his duties and responsibilities;

    (B)     Embezzlement, fraud, or misappropriation against or with respect to a Participating Employer, its Affiliates and/or their assets;

    (C)     Conviction of a felony charge or a plea of guilty or *nolo contendre* to a felony charge under State or Federal law or discovery by the Employer of such a conviction or plea that occurred within the last ten (10) years and was not previously disclosed to the Employer;

    (D)     Reporting to work under the influence of or while possessing in his body or person illegal drugs or other intoxicants in any amount consistent with Employer policy;

    (E)     Reporting to work or performing work legally impaired by alcohol or under the influence of , drugs or other intoxicants, including failure or refusal to take a test as required by Employer Policy; provided, however, the Employee can use over the counter or prescription drugs according to the direction for use for such medication provided that the Employee is able to safely and effectively perform his job;

    (F)     Unlawful trading in the securities of any corporation (including the Company) based on information gained as a result of the Participant's performance of services for a Participating Employer or an Affiliate;

    (G)     Violation of any of the corporate policies, work rules or standards of a Participating Employer, including but not limited to the Code of Conduct, sexual harassment policy and insider trading policy, or violation of any applicable statute, regulation, or rule, or provision of any applicable code of professional ethics; or

    (H)     Willful disclosure to unauthorized persons of confidential information or trade secrets of a Participating Employer or its Affiliates, other than reporting any violation, or suspected violation, of any State or Federal law to the appropriate governmental agency, including, without limitation, reporting any violation of any securities laws to the Securities and Exchange Commission or disclosure in the context of an investigation or proceeding conducted by any government agency

against the Company or any Affiliate, including, without limitation, for retaliation for reporting any violation, or suspected violation, of any State or Federal law.

2.5 Code. The Internal Revenue Code of 1986, as amended from time to time, and as construed and interpreted by valid regulations or rulings issued thereunder.

2.6 Company. Neenah Paper, Inc., a Delaware Company.

2.7 Effective Date. December 1, 2004, or with respect to a particular Affiliate, such later date as of which the Plan Administrative Committee deems such Affiliate to be a Participating Employer in the Plan.

2.8 Eligible Employee. Each salaried Employee who is on the regular U.S. payroll of a Participating Employer other than an Employee who is an eligible employee under the Neenah Executive Severance Plan or any Employee working on a short-term assignment (as determined by the Company) unless the Employee is explicitly informed in a writing signed by an Officer of the Employer that he or she is eligible for participation in the Plan. For purposes of this subsection, "on the regular payroll of a Participating Employer" shall mean paid through the payroll department of such Employer, and shall exclude (i) Employees classified or reclassified by an Employer as intermittent or temporary, (ii) persons classified by an Employer as independent contractors, regardless of how such persons may be classified or reclassified by any federal, state, or local, domestic or foreign, governmental agency or instrumentality thereof, or court; and (iii) Employees covered by a collective bargaining agreement unless the collective bargaining agreement provides for participation in the Plan.

2.9 Employee. A common law employee of a Participating Employer, as reflected on the Employer's payroll records.

2.10 Employer. The Company and each Affiliate that the Plan Administrative Committee shall from time to time designate as a Participating Employer for purposes of the Plan. Appendix A hereto sets forth a list of Participating Employers and may be amended from time to time by the Plan Administrative Committee without Board action or approval.

2.11 ERISA. The Employee Retirement Income Security Act of 1974, as amended from time to time, and as construed and interpreted by valid regulations or rulings issued thereunder.

2.12 Group Termination. The termination of employment of Employees in the event of the following circumstances:

   (A) any separation or reorganization of the Employer including, but not limited to, a sale, spin-off or shutdown of a portion of the Employer, including but not limited to a sale of assets, sale of a subsidiary or division, spin-off of stock, or a shutdown of a portion of a mill or other location, or

(B)     The outsourcing of an Employee to a company other than an Employer, in which such Employee resumes an equivalent position or job as he or she had with the Employer.

2.13    Officer.  An Eligible Employee who is designated by the Board as an "officer" of the Company for the purposes of Section 16 of the Securities Exchange Act of 1934.

2.14    New Participating Employer.  A Participating Employer that has been added to Appendix A as a result of the acquisition, merger, or similar transaction by the Company (or an Affiliate).

2.15    Participant.  An Eligible Employee who is eligible to receive Severance Pay pursuant to Article III.

2.16    Participating Employer.  An Affiliate that has been approved by the Plan Administrative Committee as an Employer participating in the Plan.  Appendix A hereto sets forth a list of Participating Employers and may be amended from time to time by the Plan Administrative Committee without Board action or approval.

2.17    Plan.  This Neenah Severance Pay Plan, as amended.

2.18    Plan Administrative Committee.  The committee appointed by the Board to administer the Plan as provided in Article V.

2.19    Plan Administrator.  The Company, as designated in Section 5.12.

2.20    Plan Year.  The calendar year.

2.21    Prior Employer Service Credit.  If so designated on Appendix A, each Eligible Employee employed by a New Participating Employer as of the closing of the transaction by which the employer becomes a New Participating Employer (or who was on authorized leave of absence on such date) shall be credited with Years of Service for the period preceding such date in an amount equal to the Years of Service such individual would have received under the terms of the Plan if the New Participating Employer and any New Participating Employer Affiliate had been an Employer during such period. A "New Participating Employer Affiliate" is any entity which on the date of determination (1) was a member of a controlled group of corporations (as defined in Code Section 414(b)) which included the New Participating Employer, (2) was a trade or business (whether or not incorporate) which controlled, was controlled by or was under control with (within the meaning of Code Section 414(c)) the New Participating Employer, (3) was a member of an affiliated service group (as defined in Code Section 414(m)) which included the New Participating Employer, or (4) would otherwise have been required to be aggregated with the New Participating Employer pursuant to Code Section 414(o) and regulations promulgated thereunder.

2.22    Severance Pay.  Payment made to a Participant pursuant to Article IV hereof.

2.23    Termination Date. The date on which a Participant has a Termination of Employment.

2.24    Termination of Employment. A Participant's "separation from service" within the meaning of Code Section 409A that also is a complete cessation of the Participant's status as a common law employee of a Participating Employer and all Affiliates.

2.25    Years of Service.

     (A)    Except as set forth below with respect to Employees of New Participating Employers, an Employee shall be credited with a Year of Service for each year commencing with the Employee's date of hire or adjusted date of hire, as applicable, as maintained by the payroll department of the applicable Participating Employer until the Employee's Termination Date, rounded to the nearest whole year of service.

     (B)    As of the Effective Date, all Years of Service recognized by Kimberly-Clark Corporation for service with it, any of its subsidiaries and predecessors shall be counted as Years of Service under this Plan.

     (C)    With respect to each New Participating Employer, if so indicated on Appendix A, Years of Service shall include Prior Employer Service Credit. If Prior Service Credit is not indicated for a New Participating Employer is on Appendix A, any Eligible Employee of that New Participating Employer shall only be credited with a Year of Service for each year commencing with the closing date of the Company's (or an Affiliate's) acquisition of the New Participating Employer until the Employee's Termination Date, rounded to the next whole Year of Service.

     (D)    For purposes of this Plan (other than with regard to eligibility), any fractional year equal to or in excess of six (6) months shall be rounded up to a full year.

2.26    Construction. Where appearing in the Plan the masculine shall include the feminine and the plural shall include the singular, unless the context clearly indicates otherwise. The words "hereof," "herein," "hereunder" and other similar compounds of the word "here" shall mean and refer to the entire Plan and not to any particular Section or subsection.

**ARTICLE III**

**ELIGIBILITY AND PARTICIPATION**

3.1    Participation. An Eligible Employee shall become a Participant in the Plan as follows:

     (A)    Grandfathered Employees:  Each Eligible Employee who is employed by a Participating Employer on the Effective Date shall become a Participant in the Plan as of the Effective Date; and

     (B)    Hires After Effective Date:  Each Eligible Employee who is hired (or rehired) after the Effective Date of the Plan shall become a Participant on the first day he

SEVERANCE PAY PLAN (2017)        Page 5
PGDOCS\6362132.9

is actively employed or reemployed, as applicable, by a Participating Employer and, if required by the Participating Employer, after his timely execution of a noncompete agreement, in a form acceptable to the Plan Administrative Committee.

3.2    Eligibility for Severance Pay. Each Participant who has a Termination of Employment as a result of an involuntary termination by a Participating Employer shall receive Severance Pay; provided, however, that Severance Pay shall not be paid to any Participant:

   (A)    whose employment is terminated for Cause;

   (B)    whose employment is terminated during a period in which such Participant is not actively at work (*i.e.*, has been on leave of absence, disability or workers' compensation) for more than 25 weeks, except to the extent otherwise required by law;

   (C)    who voluntarily quits or retires;

   (D)    who dies;

   (E)    whose employment is terminated as part of a Group Termination for which the Company offers a special severance package in connection with that Group Termination; or

   (F)    who is offered employment on similar terms and conditions by another Participating Employer.

The Plan Administrative Committee shall have the sole discretion to determine whether a termination is voluntary or involuntary and whether a Participant's termination is for Cause.

3.3    Duration. A Participant remains a Participant under the Plan until the earliest of:

   (A)    the date the Participant is no longer an Eligible Employee;

   (B)    the Participant's Termination Date; or

   (C)    the date the Plan terminates.

3.4    Severance Agreement and Release. No Participant shall be entitled to receive Severance Pay hereunder unless such Participant executes a Severance Agreement and Release in a form acceptable to the Plan Administrative Committee (which, in the Plan Administrative Committee's sole discretion, may contain a non-competition covenant from the Participant in favor of the Company and/or any Affiliate) no later than the end of the period specified in the Severance Agreement and Release (which in all cases will be not later than sixty (60) days after Termination Date) and such Participant does not revoke

such Severance Agreement and Release in writing within the seven (7) day period following the date on which it is executed.

## ARTICLE IV

### SEVERANCE BENEFITS

4.1    Severance Pay. A Participant's Severance Pay shall be determined as follows:

(A)    Amount of Severance Pay. The amount of severance payable under this Plan is equal to one (1) week of Base Salary per Year of Service; provided, however, that the minimum amount of Severance Pay a Participant may receive is four (4) weeks of Base Salary and the maximum is twenty-six (26) weeks of Base Salary.

(B)    Notwithstanding the foregoing:

(1)    Rehires and Second Terminations.    A Participant who has received Severance Pay under the Plan and is rehired within eighteen (18) months following termination and subsequently terminated shall receive Severance Pay reduced by the Years of Service previously used in determining such Participant's Severance Pay under this Plan, or any other severance paid by the Company or its Affiliates.

(2)    Voluntary Early Retirement Program Benefit.    A Participant who retires under a voluntary early retirement program specified under the applicable provisions of the Neenah Paper Pension Plan for one or more specific Employer locations shall receive severance pay in accordance with the terms approved by the Chief Executive Officer of the Company for such program, if any.    Such Participant shall not be eligible to receive Severance Pay under any other provision of this Plan, and nothing herein shall be construed to entitle such Participant to Severance Pay under this Plan.

(C)    Form and Timing of Payment of Severance Pay. Severance Pay shall be paid as a lump sum cash payment made as soon as practicable following a Participant's Termination Date, but no more than the fifteenth (15th) day of the third month thereafter.

(D)    Offsets to Severance Pay.

(1)    The Severance Pay determined pursuant to Section 4.1(A) will be offset by any amount paid or payable to a Participant (but only to an amount not less than zero) pursuant to the Worker Adjustment and Retraining Notification Act ("WARN"), or any similar state law, in lieu of notice thereunder.

    (2)    If, at the time Severance Pay is to be made hereunder, a Participant is indebted or obligated to an Employer or any Affiliate, then such Severance Pay may, at the discretion of the Plan Administrative Committee, be reduced by the amount of such indebtedness or obligation to the extent allowable under applicable federal or state law; provided that an election not to offset shall not constitute a waiver of its claim of such indebtedness or obligation, in accordance with applicable law.

    (3)    Notwithstanding any provision in the Plan to the contrary, Severance Pay shall be reduced by the amount of any other severance payments made by a Participating Employer.

4.2    <u>Funding</u>. Benefits shall be paid from the general assets of the Company.

4.3    <u>Withholding</u>. A Participant shall be responsible for payment of any Federal, Social Security, state or local taxes on Severance Pay under the Plan. The Employer shall deduct from Severance Pay any Federal, Social Security, state or local taxes which are subject to withholding, as determined by the Employer.

## ARTICLE V

## PLAN ADMINISTRATIVE COMMITTEE

5.1    <u>Plan Administrative Committee</u>. The Company may designate one or more persons to serve on the Plan Administrative Committee to carry out its fiduciary responsibility and authority under the Plan and its duties as the plan administrator.

5.2    <u>Membership</u>.

    (A)    The Plan Administrative Committee shall consist of at least three (3) persons who shall be appointed by and serve at the pleasure of the Board.

    (B)    The Board shall have the right to remove any member of the Plan Administrative Committee at any time. A member may resign at any time by written resignation to the Board. If a vacancy in the Plan Administrative Committee should occur, a successor may be appointed by the Board.

5.3    <u>Powers</u>. The Plan Administrative Committee shall have all such powers as may be necessary to discharge its duties hereunder, including, but not by way of limitation, the power to construe or interpret the Plan, to determine all questions of eligibility hereunder, and to perform such other duties as may from time to time be delegated to it by the Board. The Plan Administrative Committee may prescribe such forms and systems and adopt such rules and methods and tables as it deems advisable. It may engage such agents, attorneys, accountants, actuaries, medical advisors, or clerical assistants (none of whom need be members of the Plan Administrative Committee) as it deems necessary for the effective exercise of its duties, and may delegate to such agents any power and duties both ministerial and discretionary, as it may deem necessary and appropriate. The

compensation of such agents who are not full-time employees of an Employer shall be fixed by the Plan Administrative Committee within limits set by the Board and shall be paid by the Company.

5.4     Organization and Procedures. The Plan Administrative Committee shall elect one of its members as chairman. Its members shall serve as such without compensation. Plan Administrative Committee expenses shall be paid by the Company. A majority of the Plan Administrative Committee members shall constitute a quorum. The Plan Administrative Committee may take any action upon a majority vote at any meeting at which a quorum is present, and may take any action without a meeting upon the unanimous written consent of all members. All action by the Plan Administrative Committee shall be evidenced by a certificate signed by a member of the Plan Administrative Committee. The Plan Administrative Committee shall appoint a secretary to the Plan Administrative Committee who need not be a member of the Plan Administrative Committee, and all acts and determinations of the Plan Administrative Committee shall be recorded by the secretary, or under his supervision. All such records, together with such other documents as may be necessary for the administration of the Plan, shall be preserved in the custody of the secretary.

5.5     Rules and Decisions. All rules and decisions of the Plan Administrative Committee shall be uniformly and consistently applied to all Eligible Employees and Participants under this Plan in similar circumstances and shall be conclusive and binding upon all persons affected by them.

5.6     Authorization of Payments. Subject to the provisions hereof, it shall be the duty of the Plan Administrative Committee to furnish the Company with all facts and directions necessary or pertinent to the proper disbursement of Severance Pay.

5.7     Books and Records. The records of the Employers shall be conclusive evidence as to all information contained therein with respect to the basis for participation in the Plan and for the calculation of Severance Pay. The Plan Administrative Committee shall keep all individual and group records relating to Participants and all other records necessary for the proper operation of the Plan. Such records shall be made available to the Employers and to each Participant for examination during normal business hours except that a Participant shall examine only such records as pertain exclusively to the examining Participant and the Plan. The Plan Administrative Committee shall prepare and shall file as required by law or regulation all reports, forms, documents and other items required by ERISA, the Code and every other relevant statute, each as amended, and all regulations thereunder and shall retain appropriate records thereof.

5.8     Claims Procedures.

        (A)     Authorized Representative. A Participant or beneficiary under the Plan may name an authorized representative to act on his or her behalf under the claims procedures of the Plan, by providing written documentation of such authorization in such form as is acceptable to the Plan Administrative Committee.

(B)    Procedure for Making Initial Claims. Claims for benefits under the Plan may be made by submitting forms to the Plan Administrative Committee pursuant to procedures established by the Plan Administrative Committee from time to time.

(C)    Review of Claims for Benefits.

(1)    Determination Regarding Initial Claims. If a claim for Plan benefits is denied, the Plan Administrative Committee shall provide a written notice within 90 days to the claimant that contains (i) specific reasons for the denial, (ii) specific references to Plan provisions on which the Plan Administrative Committee based its denial, (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary and (iv) a description of the Plan's review procedures and time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The notice shall also contain a statement that the claimant may (i) request a review upon written application to the Plan Administrative Committee within 60 days, (ii) submit written comments, documents, records and other information relating to the claim, and (iii) request copies of all documents, records, and other information relevant to the claimant's claim. If a claim is denied because of incomplete information, the notice shall also indicate what additional information is required.

If additional time is required to make a decision on the claim, the Plan Administrative Committee shall notify the claimant of the delay within the original 90 day period. This notice will also indicate the special circumstances requiring the extension and the date by which a decision is expected. This extension period may not exceed 90 days beyond the end of the first 90-day period.

(2)    Appeals. The claimant may appeal a denied claim by submitting a written request for an appeal review to the Plan Administrative Committee. The appeal request must, however, be made within 60 days after the claimant's receipt of notice of the denial of the claim. Pertinent documents may be reviewed in preparing an appeal, and issues and comments may be submitted in writing. The claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits (as determined under applicable regulations). An appeal shall be given a complete review by the Plan Administrative Committee, taking into account all comments, documents, records and other information submitted by the claimant without regard to whether such information was submitted or considered in the initial benefit determination.

The Plan Administrative Committee shall review an appeal of a denied claim no later than the date of the next Plan Administrative Committee meeting immediately following such request for

SEVERANCE PAY PLAN (2017)          Page 10
PGDOCS\6362132.9

review, unless the request for review is filed within 30 days preceding the date of such meeting. In such case, a benefit determination may be made by no later than the date of the second meeting following the Plan Administrative Committee's receipt of a request for review. If special circumstances require a further extension of time for processing, a benefit determination shall be rendered no later than the third meeting of the Plan Administrative Committee following the Plan Administrative Committee's receipt of the request for review. If such an extension of time for review is required because of special circumstances, the Plan Administrative Committee shall provide the claimant with written notice of the extension, describing the special circumstances and the date as of which the benefit determination will be made, prior to the commencement of the extension. The Plan Administrative Committee shall notify the claimant of the benefit determination as soon as possible, but not later than 5 days after the benefit determination is made.

> (3)     Content of Denial on Appeal. If a claim for Plan benefits is denied on appeal, the Plan Administrative Committee shall provide a written notice to the claimant that contains (i) specific reasons for the denial, (ii) specific references to Plan provisions on which the Plan Administrative Committee based its denial, (iii) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits, and (iv) a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

5.9     Plan Administrative Committee Discretion. Any action on matters within the authority and discretion of the Plan Administrative Committee, including but not limited to, the amount of Severance Pay conferred upon a Participant, shall be final and conclusive as to all Eligible Employees and other persons claiming rights under the Plan. The Plan Administrative Committee shall exercise all of the powers, duties and responsibilities set forth hereunder in its sole discretion. Notwithstanding anything in this Plan to the contrary, the Plan Administrative Committee shall decide, in its sole discretion, whether Severance Pay shall be payable to any Participant under this Plan.

5.10    Plan Amendments. The Board may from time to time modify, alter, amend or terminate the Plan. Any action taken by the Board shall be made by or pursuant to a resolution duly adopted by the Board and shall be evidenced by such resolution or by a written instrument executed by such persons as the Board shall authorize for that purpose.

The Board also shall have the right to make any amendment retroactively which is necessary to bring the Plan into conformity with the Code or which is otherwise permitted by applicable law. Any such amendment will be binding and effective for the Employer.

5.11    Delegation of Duties. This Plan is sponsored by the Company. The Plan Administrative Committee reserves the right to delegate any and all nonfiduciary administrative duties to one or more individuals or organizations. Any reference herein to any other entity or person, other than the Plan Administrative Committee or any of its members, which is

performing nonfiduciary administrative services shall also include any other third party administrators. The responsibilities of any third party administrator may be governed, in part, by a separate administrative services contract.

5.12    Plan Administrator.   The Company shall be the "plan administrator" as described in ERISA, but specific duties have been delegated to the Plan Administrative Committee as specified hereunder. The Plan Administrative Committee and the Plan Administrator shall be named fiduciaries of the Plan.

## ARTICLE VI

## LIMITATIONS AND LIABILITIES

6.1    No Guarantee of Employment.   Nothing contained in this Plan shall be construed as a contract of employment between an Employer and a Participant, or as a right of any Participant to be continued in the employment of his Employer, or as a limitation of the right of an Employer to discharge any Participant with or without Cause.  Nor shall anything contained in this Plan affect the eligibility requirements under any other plans maintained by the Employer, nor give any person a right to coverage under any other Plan.

6.2    Nonalienation.   Except as otherwise provided herein, no right or interest of any Participant in the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, attachment, garnishment, execution, levy, bankruptcy, or any other disposition of any kind, either voluntary or involuntary, prior to actual receipt of payment by the person entitled to such right or interest under the provisions hereof, and any such disposition or attempted disposition shall be void.

6.3    Applicable Law.   This Plan is construed under, to the extent not preempted by Federal law, enforced in accordance with and governed by, the laws of the State of Georgia.  By accepting benefits under the Plan, each Participant (i) consents and submits to personal jurisdiction and venue in the appropriate State or Federal court located in or embracing, as applicable, Fulton County, Georgia (referred to as the "Court"); (ii) waives any and all objections to jurisdiction and venue in the Court; and (iii) waives any objection that the Court is an inconvenient forum, with respect to any action arising out of or relating to this Plan.  The Participant further agrees that jurisdiction and venue concerning any legal or equitable action to enforce or interpret the Plan or any release, noncompete, or other agreement under the Plan, or otherwise arising out of this Plan or such agreement, may be brought in the Court.If any provision of this Plan is found to be invalid, such provision shall be deemed modified to comply with applicable law and the remaining terms and provisions of this Plan will remain in full force and effect.

6.4    Notice.   Any notice given hereunder is sufficient if given to the Employee by the Employer, or if mailed to the Employee to the last known address of the Employee as such address appears on the records of the Employer.

6.5    Service of Process. The Company shall be the designated recipient of service of process with respect to legal actions regarding the Plan.

6.6    No Guarantee of Tax Consequences. The Employer makes no commitment or guarantee that any amounts paid to or for the benefit of a Participant under this Plan will be excludable from the Participant's gross income for Federal, Social Security, or state or local income tax purposes, or that any other Federal, Social Security, or state or local income tax treatment will apply to or be available to any Participant. It shall be the obligation of each Participant to determine whether each payment under this Plan is excludable from the Participant's gross income for Federal, Social Security, and state or local income tax purposes, and to notify the Plan Administrator if the Participant has reason to believe that any such payment is not so excludable.

6.7    Limitation of Liability. Neither the Employer, the Plan Administrator, nor the Plan Administrative Committee shall be liable for any act or failure to act which is made in good faith pursuant to the provisions of the Plan, except to the extent required by applicable law. It is expressly understood and agreed by each Eligible Employee who becomes a Participant that, except for its or their willful misconduct or gross neglect, neither the Employer, the Plan Administrator nor the Plan Administrative Committee shall be subject to any legal liability to any Participant, for any cause or reason whatsoever, in connection with this Plan, and each such Participant hereby releases the Employer, its officers and agents, and the Plan Administrator, and its agents, and the Plan Administrative Committee, from any and all liability or obligation except as provided in this paragraph.

6.8    Indemnification of the Plan Administrative Committee. The Employer shall indemnify the Plan Administrative Committee and each of its members and hold them harmless from the consequences of their acts or conduct in their official capacity, including payment for all reasonable legal expenses and court costs, except to the extent that such consequences are the result of their own willful misconduct or breach of good faith.

6.9    Termination and Amendment of the Plan. The Board shall have power at any time, in its discretion, to amend or terminate this Plan, in whole or in part. The Plan Administrative Committee shall also have the power to amend the Plan, except in a manner that would materially affect (i) the cost to the Company, (ii) the contributions made by the Company, or (iii) the eligibility provisions of Plan, or that would determine compensation of an Officer.

IN WITNESS WHEREOF, the Company has caused this Plan to be executed by its duly authorized officer.

NEENAH PAPER, INC.

Name:   Matthew L. Duncan

Title:   SVP & Chief Human Resources Officer

Date:   4/1/17

## APPENDIX A

## PARTICIPATING EMPLOYERS

| Participating Employers | Effective Date of Participation | Prior Employer Service Credit? |
|---|---|---|
| Neenah Paper, Inc. | December 1, 2004 | N/a |
| Neenah Paper Michigan, Inc. | December 1, 2004 | N/a |
| Neenah Paper FR LLC | February 5, 2007 | Yes |
| Neenah Paper FVC, Inc. | February 5, 2007 | Yes |
| Neenah Paper International, LLC | January 1, 2008 | Yes |
| Neenah Technical Materials, Inc. (f/k/a Crane Technical Materials, Inc.) | July 1, 2014 | Yes |
| Neenah Northeast, LLC (f/k/a Fibermark North America, LLC) | August 1, 2016 | Yes |

*including those on temporary assignment at other employers or in other classifications, but excluding employees on temporary assignment from another Employer or classification.

# EXHIBIT B

# SEVERANCE PAY CLAIM OF WOODCOCK

July 29, 2019


Plan Administrator
Neenah Paper, Inc.
Employee Benefits Department
3460 Preston Ridge Rd.
Suite 600
Alpharetta, GA 30005

RE: CLAIM under ERISA Plan Number 511 as amended (the "Plan")

Dear Sir/Madam:

On January 4, 2019 I submitted a claim to John P. O'Donnell, President and CEO. Neenah Paper, Inc. ("Neenah") has not responded to my claim within 90 days as required under the provisions of Plan 511 (the "Plan"). As I am required to exhaust my administrative rights prior to filing suit in State and/or Federal court, and you have not responded timely, I want to make certain that my filing of my claim with Mr. O'Donnell, instead of directly with you, did not violate the procedure.

My claims are as follows:

1) Neenah's Plan 511 is an ERISA "welfare" plan type.
2) I was, at all times, covered by the Plan, and was terminated by Neenah on December 31, 2018.
3) Severance in a lump sum cash payment was due 90 days after the date of my termination.
4) Under the plan I was eligible for the maximum of 26 weeks of pay.
5) In May 2018, Ms. Renee Schwartz, Vice President of Operations – Fine Paper, stated per the Plan that if I agreed to stay with Neenah until December 31, 2018 I would receive full severance and payment of earned but unused vacation time (in my case 3 weeks).
6) I worked for Neenah through December 31, 2018 when I was terminated by Neenah.
7) On October 25, 2018, Mr. Matthew Duncan, Senior Vice President, and Ms. Schwartz, advised that Neenah planned to shut down the Brattleboro facility and notified me pursuant to the WARN Act (Worker Adjustment and Retraining Notification Act). At that time, they advised me that I would receive twenty-six weeks (26) of severance pay and three (3) weeks of earned but unused vacation pay.
8) As of this date those funds have not been paid.

1

It is well established law under *Gilbert v. Burlington Industries, Inc.* 765 F.2d 320 (2d Cir. 1985) ("Eligibility for benefits thus was to be determined by the discontinuity of an employee's employment – and not by the duration of unemployment, however, fleeting that might be.") that Neenah's termination of me made me eligible for severance. Similarly, Ms. Schwartz's verbal modification of or addition to the plan to include my earned but unused vacation pay, have been found binding on the employer under ERISA.

I hereby make and file a claim pursuant to the Neenah Paper Severance Pay Plan[1], as modified, for 26 weeks of severance pay and 3 weeks of vacation pay.   Since you have had my claim since January 2019 and my letter to Mr. O'Donnell should have been forwarded to your department I expect prompt attention to this claim and full payment at this time.

Gayle Woodcock
69 Toby Hill Road
South Woodstock, Vermont 05351
802-881-9014
gaylewoodcock@rocketmail.com

---

[1] See Summary Booklet effective March 1, 2007.

2

# EXHIBIT C

# NEENAH'S DENIAL OF
# SEVERANCE PAY CLAIM OF WOODCOCK



3460 Preston Ridge Road, Suite 600
Alpharetta, GA  30005

ph. 678.566.6500

www.neenah.com

September 3, 2019

Ms. Gayle Woodcock
69 Toby Hill Road
South Woodstock, Vermont 05351

Re: Appeal for eligibility under the Neenah Severance Pay Plan

Dear Ms. Woodcock:

The Plan Administrative Committee (the "Committee") of the Neenah Severance Pay Plan (as amended and restated on April 1, 2017, the "Plan") is in receipt of your letter dated July 29, 2019.  This claim determination notice is being provided in accordance with Section 5.8(C)(1) of the Plan document.  All capitalized terms not defined herein shall have the meanings ascribed to them under the Plan.

In your letter you claim that on October 25, 2018 you were notified pursuant to the Worker Adjustment and Retraining Notification (WARN) Act of the company's plan to close the facility located at 161 Wellington Road, Brattleboro, VT and that your anticipated separation date would be on or around December 31, 2018.  You further state that you were terminated by the company on December 31, 2018 and that you were consequently eligible for 26 weeks of severance pay under the Plan.

As an initial matter, per Section 5.9 of the Plan, the Committee has sole discretion to determine benefit eligibility under the Plan and any such decisions shall be final and conclusive as to any persons claiming rights under the Plan.

Further, per Section 1.4 of the plan, the purpose of the Plan is to provide temporary income replacement to Eligible Employees who are involuntarily terminated by the Company.

Section 3.2 of the Plan provides:

> *Each Participant who has a Termination of Employment as a result of an involuntary termination by a Participating Employer shall receive Severance Pay; provided, however, that Severance Pay shall not be paid to any Participant:*
>
> *(a)    Whose employment is terminated for Cause;*
> *(b)    Whose employment is terminated during a period in which such Participant is not actively at work (ie, has been on leave of absence, disability or workers' compensation) for more than 25 weeks, except to the extent otherwise required by law;*
> *(c)    Who voluntarily quits or retires;*

*(d)* *Who dies;*

*(e)* *Whose employment is terminated as part of a Group Termination for which the Company offers a special severance package in connection with the Group Termination; or*

*(f)* *Who is offered employment on similar terms and conditions by another Participating Employer.*

As you know, on December 31, 2018 and pursuant to a written purchase agreement (the "Agreement"), Neenah Northeast, LLC (the "Seller") completed the sale of all the assets at the Brattleboro, VT facility to Long Falls Paperboard, LLC (the "Buyer"). Pursuant to the terms of the Agreement and in conjunction with the sale of the assets, Seller assigned to Buyer and Buyer assumed from Seller certain employment relationships at the Brattleboro, VT location (the "Transferred Employees"), expressly including your employment relationship and related liabilities. Immediately following the transaction, the Transferred Employees became employees of the Buyer.

You were listed in the Purchase Agreement as a current employee. As a part of the sale agreement the Purchaser agreed to pay for the severance obligation of any Company Employee not offered employment.

Based on the terms of the Agreement, your employment was not terminated – either expressly or constructively – as a result of the December 31, 2018 transaction. While the company previously informed you of its intention to permanently close the Brattleboro, VT facility, your claim fails to acknowledge that such closure never occurred and that your employment at the Brattleboro, VT facility continued uninterrupted prior to and following the consummation of the sale.

In reviewing your claim for benefits under the Plan, the Committee has determined that the eligibility requirements for Severance Pay under Section 3.2 of the Plan have not been met. Based on the foregoing, your claim for benefits under the Plan is hereby denied.

Per Section 5.8 of the Plan, as a result of this determination you have the right to (i) within 60 days, request a review of this determination upon written application to the Committee, (ii) submit written comments, documents, records, and other information relating to your claim, and (iii) request copies of all documents, records, and other information relevant to your claim.

Nothing contained herein shall be interpreted or construed to restrict or impede any rights you may have to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974.

Sincerely,

Trevor D. Armstrong
Chairman, Plan Administrative Committee

# EXHIBIT D

# WOODCOCK'S APPEAL OF
# NEENAH'S DENIAL OF SEVERANCE PAY

October 2, 2019

Mr. Trevor D. Armstrong
Chairman, Plan Administrative Committee
Neenah, Inc.
3460 Preston Ridge Road
Suit 600
Alpharetta, GA 30005

      RE: **NOTICE OF APPEAL**
      Denial of Gayle E. Woodcock's Claim Under Neenah Severance Pay Plan

Dear Mr. Armstrong:

      Pursuant to Section 5.8(2) of the Neenah Severance Pay Plan, I hereby submit my Appeal of your Denial of severance pay dated September 3, 2019. Attached hereto is my Appeal.

          Sincerely,

          Gayle E. Woodcock
          69 Toby Hill Road
          South Newfane, Vermont 05351
          802-881-9014

1

# APPEAL

## FROM DENIAL OF SEVERANCE BENEFITS

On September 3, 2019 the Plan Administrative Committee (the "Committee") denied

Gayle E. Woodcock's ("Woodcock") claim dated July 29, 2019 for severance pay under the

Neenah Severance Pay Plan (as amended and restated on April 1, 2017) (the "Plan").

Pursuant to the Plan - Section 5.8 (2) Gayle E. Woodcock hereby appeals from that

denial.

## UNDISPUTED FACTS

The following facts are not in dispute:

1) The Plan is a welfare plan under ERISA (Employee Retirement Income Security Act of

1974 (29 U.S.C. ch 18 Sec. 1001 et seq.).

2) Woodcock was an at-will employee in good standing of Neenah Northeast, LLC, a

wholly owned subsidiary of Neenah, Inc. (All references herein to the "Company" or

"Neenah" are inclusive of Neenah Northeast, LLC.)   Her responsibilities and services

rendered, while including the Brattleboro facility, also included other Neenah Northeast,

LLC facilities, namely: Quakertown, Pennsylvania; Brownsville, New York; and West

Springfield, Massachusetts.

3) Woodcock was a Participant in the Plan pursuant to Plan - Section 3.1 and an Eligible

Employee under Plan - Section 2.8.

4) Under the Plan - Sections 2.25 and 4.1(A) Woodcock qualified for twenty-six weeks of

Base Salary as severance pay.

2

5) In May 2018, Renee Schwartz, Vice President of Operations – Fine Paper, informed Woodcock that Neenah intended to sell or close the Brattleboro, Vermont facility and represented to Woodcock she would be paid twenty-six (26) weeks of severance and three (3) weeks of earned but unused vacation pay if Woodcock agreed to work until December 31, 2018.

6) On October 25, 2018 Matthew Duncan, Senior Vice President, and Renee Schwartz, upon Neenah issuing a WARN (Worker Adjustment and Retraining Notification Act) notice, reiterated and confirmed to Woodcock that she would be paid twenty-six (26) weeks of severance and three (3) weeks of earned but unused vacation pay if she agreed to work until December 31, 2018. At no time, were these statements rescinded.

7) Woodcock accepted Neenah's offer and continued her employment with Neenah.

8) Woodcock was involuntarily terminated as part of a Group Termination under the Plan (Plan - Section 2.12 (A)) on December 31, 2018.

9) At all times, Woodcock was able and willing to continue to perform services to Neenah after December 31, 2018.

10) At no time, did Neenah offer Woodcock a "special severance package" referred to in Plan – Section 3.1(E).

11) Long Falls Paperboard, LLC ("Long Falls") is not a "Participating Employer" or any of their affiliates. (Plan – Appendix A.)

12) Woodcock was hired by Long Falls on January 2, 2019 and her payroll began on that date.

3

## ARGUMENT

Congress enacted ERSIA to protect working men and woman from abuses in the administration and investment of private retirement plans and employee welfare plans. H.R. Rep. No. 93-533, 93rd Cong. 2d Sess. Reprinted in (1974) U.S. Code Cong. & Ad. News 4639; *Donovan v. C H Dillingham CH III W*, 688 F.2d 1357. The denial of severance to Woodcock is such an abuse.

The Plan was intended to qualify as an employee welfare benefit plan. (Plan - Section 1.3). Its purpose "is to provide temporary income replacement to eligible employees who are involuntarily terminated by" Neenah, Inc. (the "Company" or "Neenah"). (Plan - Section 1.4).

I.   Neenah's Sole Reason for Denial of Severance

Neenah's sole reason for not providing Woodcock severance was provided in its denial dated September 3, 2019 (the "Denial"):

"Based on the terms of the Agreement[1], your employment was not terminated – either expressly or constructively – as a result of the December 31, 2018 transaction." (Denial at 2.)

II.   The Agreement is Not Part of the Plan and Has No Effect

The Agreement[1] is neither a part of the Plan, nor is it referenced in the Plan.

In examining issues involving rights and obligations under an ERISA regulated welfare plan, "federal courts must be guided by federal substantive law." *Firestone Tire &n Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S. Ct. 948, 954 (1989). Development of federal common law under ERISA are guided by principles of trust law. *Id.* at 110 -111. Employee benefit plans are construed "without deferring to either party's interpretation . . . The terms of trusts created within

---

[1] The "Agreement" refers to the agreement between Neenah Northeast, LLC and Long Falls Paperboard, LLC which called for the sale of certain assets of the Neenah Brattleboro, Vermont facility. (See Denial.)

4

*written instruments* are 'determined by the *provisions of the instrument* in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust *is not admissible.*" (Emphasis added.) *Id.* at 112 (citing Restatement (Second) of Trusts paragraph 4, Comment d). Therefore, "the validity of a claim to benefits under an ERISA plan turns on the *interpretation of the terms in the plan at issue*." (Emphasis added.) *Id.* at 115. See also *Bellino v. Schumberger Technologies, Inc.*, 753 F. Supp. 394 (D. Me. 1990). Therefore, provisions of the Agreement are *not* terms of the plan and *may not* be considered or relied upon by Neenah in denying Woodcock severance pay.

Moreover, the Plan never discusses or comprehends the concept of "Transferred Employees" introduced in the Denial, nor, does the Plan, provide that Neenah has the power, much less the legal right to transfer Woodcock's "employment relationship" with Neenah to a third party, such as Long Falls. Woodcock was an at-will employee, not under contract with Neenah. Therefore, Neenah's allegation that Woodcock, in essence, is chattel, that Neenah can sell and/or transfer at its sole discretion is wrong and illegal. Such a notion violates the 13th Amendment of the U.S. Constitution and therefore is null and void on its face.

III.     Woodcock was Terminated by Neenah

The Plan (Section 2.24) defines "termination of employment" as "a Participant's 'separation from service' within the meaning of Code [Internal Revenue Code of 1986] - Section 409A that also is a complete cessation of the Participant's status as a common law employee of a Participating Employer and all Affiliates." Involuntary Separation of Service under the Code - Section 409A "means a separation from service due to the independent exercise of the unilateral authority of the service recipient to terminate the service provider's services, other than due to the service provider's implicit or explicit request,

5

where the service provider was willing and able to continue performing services." *Zaharko v. San Juan Reg'l Med. Ctr. Exec. 45(f) Ret Plan*, 2018 U.S. Dist LEXIS 109529; 2018 WL 3210512. See also: " a 'bona fide' termination of employment in which the *employer/employee relationship* is completely severed." See e.g. Rev. Rule 56-214, 1956-1 C.B. 196; also see *Barrus v. United States*, 23 AFTR 2d 990 (DC NC 1969); *U.S. v. Johnson*, 331 F.2d 943 (1964) ("The phrase separation of service means separation from the service of his employer.") A transfer of ownership, as in this case, is an important, if not a dispositive, factor in determining a separation of service. *Smith v. U.S.*, 460 F.2d 1005 (1972).

Woodcock's involuntary termination was a part of a group termination as defined by the Plan (Section 2.12 (A)): "*any separation* or reorganization of the Employer including, but not limited to, a sale, spin-off or shutdown of a portion of the Employer, including but not limited to a *sale of assets* . . ." (Emphasis added.) It is admitted that Neenah sold assets of the Brattleboro facility to Long Falls on December 31, 2018. (See the Agreement and the Denial.) After December 31, 2018 Woodcock's services to Neenah completely ceased and Neenah no longer considered her an employee and in no way compensated her -- *she was separated from Neenah's payroll*. Therefore, Woodcock was terminated by Neenah on December 31, 2018 (the "Termination Date" -- Plan - Section 2.23).

Furthermore, Neenah's allegation that Woodcock's "employment was not terminated" and her employment was "uninterrupted" because she was subsequently hired by Long Falls is a false construct that is without merit and unsupported in law. The Court in *Bennett v. Gill & Duffus Chemicals, Inc.*, 699 F. Supp. 454 (S.D.N.Y. 1988) completely rejected a similar assertion of the so-called "Sale of Business Rule."[2] *Chemicals* denied *Bennett's* severance pay

---

[2] The *Bennett* Court further stated: "[T]here is no 'sale of business rule' per se." *Id.*

6

claims for "the simple reason they were never severed" because *Bennett* was subsequently hired by the new employer. In rejecting this assertion the Court said: "Courts have consistently recognized that in a sale-of-business situation, *employees are severed from their old employer* . . ." (Emphasis added.) *Id.* Furthermore, the Court observed that severance pay serves two purposes; a "reward for service to a company, as well as to provide protection against future unemployment." In Woodcock's case she was employed for more than 30 years. The Second Circuit in *Gilbert v. Burlington Industries. Inc.*, 765 F.2d 320 (2d Cir. 1985) affirmed: "By the terms of the employer's manual, eligibility to receive severance pay was limited to those employees "involuntarily terminated" from the company, *i.e. separated from the employer's payroll* and not later reemployed by the company. Eligibility for benefits thus was to be determined *by the discontinuity of an employee's employment – its severance – and not by the duration of unemployment*, however fleeting that might be." (Emphasis added.) *Id.*

IV.    The Plan's Language is Unambiguous

        The Plan's language is unambiguous. Woodcock was terminated on December 31, 2018 (Plan - Section 2.23 and 2.24). Woodcock was an "Employee of a Participating Employer" (Plan - Section 2.9, 3.1 and Appendix A). She was an "Eligible Employee" (Plan - Section 2.8) and a Participant (Plan – Section 2.15). Woodcock was involuntarily terminated as part of a Group Termination by Neenah (Plan - Section 2.12(A)). The unambiguous language of the Plan states in Section 3.2: "Each Participant who has a Termination of Employment as a result of an *involuntary termination* by a Participating Employer *shall receive Severance Pay* . . ." (Emphasis added.)

        Only under certain defined conditions will severance not be paid under the Plan per Section 3.2. *None* of those conditions were present with respect to Woodcock:

7

(A) She *was no*t terminated for cause;

(B) Her employment *was not* terminated during a period in which she was not actively at work;

(C) She *did not* voluntarily quit or retire;

(D) She *did not* die;

(E) While Woodcock was terminated as part of a Group Termination, *Neenah did not offer* her a special severance package in connection with that Group Termination;

(F) *She was not offered* employment with another Participating Employer (See Appendix A of the Plan). Long Falls was not a Participating Employer.

The Agreement is clearly outside the Plan and may not be used or relied upon as a modification of the terms of the Plan by Neenah. Therefore, any agreement reached between Neenah and Long Falls is irrelevant and may not be considered when applying the Plan to Woodcock's severance claim. *Frank v. Colt Industries, Inc.*, 910 F.2d 90, 99 (3d Cir. 1990) ("trust law looks to the settlor's intent, *but only* the settler's intent as *manifested in the trust instrument is relevant,* unless there is ambiguity in the instrument." See also *Burnham v. Guardian Life Insurance Co. of America*, 873 F.2d 486, 489-90).

While the Plan *is not ambiguous* the statements and promises made by Neenah executives, Matthew Duncan and Renee Schwartz, upon which Woodcock relied, clearly attest to the intent of Neenah to pay severance to Woodcock if she continued her employment until December 31, 2018. The situation is similar in *Frank v. Colt Industries Inc. K Schake*, 910 F.2d 90, where severance was awarded. The *Frank* Court recognized: "Crucible did not abandon the hope that the Midland plant could be sold as an on-going entity. The attraction of the business naturally would be increased if Crucible could deliver with the physical plant a number of

8

experienced employees . . ." *Id.*  Similarly, Neenah, even after its WARN notice of October 25, 2018, held out hope of a sale of Brattleboro.  Therefore, to maintain an attractive business and to continue to generate profits, it, like Crucible, sought to retain Woodcock and other employees by promising her and them both severance and vacation pay if she and they agreed to stay and work until December 31, 2018.

At no time, did Neenah amend the Plan to include the Agreement and therefore it cannot rely upon it to deny benefits based on the Agreement. See *Frank*, *supra*.

The Plan's language makes no provisions for or basis for denying severance pay to Woodcock after she was involuntarily terminated by Neenah even though she was subsequently hired by Long Falls. (Plan – Section 3.2).  Therefore, she was eligible and is entitled to full payment of twenty-six (26) weeks of base pay as severance, plus the three (3) weeks of earned but not taken vacation pay, as promised by Matthew Duncan and Renee Schwartz and required by the Plan.

## CONCLUSION

For the reasons stated above Neenah, Inc. is liable to provide Gayle E. Woodcock twenty-six (26) weeks of severance pay, plus three (3) weeks of earned but unpaid vacation pay. Such pay is immediately due.

DATED:  October 2, 2019                     Respectfully submitted,

Gayle E. Woodcock
69 Toby Hill Road
South Newfane, Vermont 05351
802-881-9014

9

# EXHIBIT E

## NEENAH'S DENIAL OF WOODCOCK'S APPEAL



3460 Preston Ridge Road, Suite 600
Alpharetta, GA  30005

ph. 678.566.6500

www.neenah.com

November 25, 2019

Ms. Gayle Woodcock
69 Toby Hill Road
South Woodstock, Vermont 05351

Dear Ms. Woodcock:

The Plan Administrative Committee (the "Committee") of the Neenah Severance Pay Plan (as amended and restated on April 1, 2017, the "Plan") is in receipt of your appeal, dated October 2, 2019, to the original denial of your claim for benefits under the Plan pursuant to our written determination dated September 3, 2019.  This appeal determination notice is being provided in accordance with Section 5.8(C)(2) of the Plan document.  Capitalized terms not defined herein shall have the meanings ascribed to them under the Plan.
In your appeal, you assert that you are entitled to severance pay under the term of the Plan simply because you were involuntarily terminated by Neenah, regardless of the following circumstances:

- Neenah arranged for you to have the opportunity for continuing employment in connection with the sale by Neenah Northeast, LLC of the Brattleboro, Vermont facility to Long Falls Paperboard, LLC ("Long Falls").
- You accepted the continuing employment opportunity and, in fact, continued employment at the Brattleboro, Vermont facility with Long Falls.
- Neenah arranged for Long Falls to provide severance protection to employees at the Brattleboro, Vermont facility as to whom Long Falls did not provide a continuing employment opportunity.

You also assert that certain verbal statements were made to you on or about October 25, 2018, by certain Neenah officers that you would receive severance pay and unused vacation payouts if you continued to work for Neenah through December 31, 2018 and, presumably, these verbal statement warrant payment to you of those amounts.
As previously stated in our original claim denial, the Committee has sole discretion to determine benefit eligibility under the Plan pursuant to Section 5.9 of the Plan.  In addition, the Committee has the sole discretion to construe and interpret the terms of the Plan pursuant to Section 5.3 of the plan.  As provided by Sections 5.5 and 5.9, any determinations by the Committee are final and conclusive as to any persons claiming rights under the Plan.



3460 Preston Ridge Road, Suite 600
Alpharetta, GA 30005

ph. 678.566.6500

www.neenah.com

In response to your assertions, the Committee has determined that you did not experience a Termination of Employment as that term is defined by the Plan. Because the Plan defines what constitutes a Termination of Employment by reference to Section 409A of the Internal Revenue Code, the Committee looks to those rules for purposes of determining whether you experienced a Termination of Employment in connection with the sale of the Brattleboro, Vermont facility. Treasury Regulations Section 409A-1(h)(4) provides that in the context of a sale of assets by one employer to an unrelated employer, the employer maintaining the plan retains the discretion to determine whether the event constitutes a termination of employment. Because of the arrangements made between Neenah and Long Falls in the asset purchase agreement on behalf of you and similarly situated employees, the continuation of your employment with Long Falls did not constitute a Termination of Employment under the terms of the Plan. In other words, the concept of a Termination of Employment in the Plan always included the possibility that an asset sale would not constitute a Termination of Employment. Because you did not experience a "termination of employment" as defined by the Plan, no severance benefit is payable to you. Assuming for the sake of argument that you had experienced a Termination of Employment within the meaning of the Plan's definition of that phrase, the exclusion from severance pay eligibility contained in Section 3.2(E) of the Plan applies. Section 3.2(E) provides that no Severance Pay shall be paid to any Participant;

> (E)    whose employment is terminated as part of a Group Termination for which the Company offers a special severance package in connection with that Group Termination; or . . .

The Committee has determined that the Section 3.2(E) exclusion applies in your situation. Section 3.2(E) does not preclude the possibility of Neenah's offer of a severance package being effected through a third party, which is what was negotiated with Long Falls, the purchaser of the Brattleboro, Vermont facility. As mentioned above, the terms of the asset purchase agreement required Long Falls to offer severance to any employee not offered an opportunity to continue employment with Long Falls. Because you were offered, and you accepted, an employment position with Long Falls, you were not eligible for that severance opportunity; however, that does not mean that a special severance package was not made available to you. The sale of the Brattleboro, Vermont facility involved a Group Termination (assuming for the sake of argument your position that the event constituted a Termination of Employment for you and similarly situated employees continuing employment with Long Falls) and a special severance package was made available to those employees by Neenah through its negotiations with Long Falls. Therefore, even if you had experienced a Termination of Employment within the meaning of the Plan, Section 3.2(E) precludes your eligibility for any Severance Pay.

The Committee's determinations in this matter are also consistent with the stated purpose of the Plan as set forth in Section 1.4. The purpose of the Plan is to provide *replacement income* to employees who experience an involuntary termination of employment and are expected to experience a period of unemployment. Finding you to be eligible for Severance Pay would be inconsistent with the stated purpose of the Plan.



3460 Preston Ridge Road, Suite 600
Alpharetta, GA 30005

ph. 678.566.6500

www.neenah.com

Finally, the Committee disagrees with your characterization of the verbal statements about severance opportunities made to you by those Neenah officers named in your appeal. Those statements were made at a time when Neenah fully expected to close the Brattleboro, Vermont facility on the assumption that a sale of the facility was unlikely. In other words, the statements were accurate at the time they were made based upon the best understanding of the known facts at that time. However, the facts changed and the plant was not closed, so the circumstances upon which the statements were predicated never materialized. In any event, to the extent any verbal statements made to you are alleged to vary from the terms of the Plan, oral statements cannot be used to vary the written terms of an ERISA plan. *Guerra-Delgado, et al. v. Popular, Inc., et al.*, No. 13-2065 (1st Cir. December 18, 2014).

For the foregoing reasons, your appeal as set forth in your correspondence of October 2, 2019 is denied in its entirety. The Committee's determination with respect to your appeal is final and binding upon all parties, except as noted below:

- Because this appeal has been denied, all available administrative remedies offered under the Plan have now been exhausted. If you still do not agree with the determination, you have the right to bring a civil action under Section 502(a) of ERISA.

- You are entitled to receive, upon request and free of charge, reasonable access to, and copies of all documents, records and other information relevant to your claim for benefits, to the extent not already provided. Any such requests should be brought to the attention of the undersigned.

Sincerely,

Trevor D. Armstrong
Chairman, Plan Administrative Committee