**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GAYLE E. WOODCOCK,

      Plaintiff,

v.

NEENAH, INC.
formerly known as
NEENAH PAPER, INC.,

      Defendant.

Civil Action No.
1:20-CV-00068-WMR

**DEFENDANT'S BRIEF IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND IN
SUPPORT OF DEFENDANT'S CROSS-MOTION FOR JUDGMENT**

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND OVERVIEW ............................................................... 1

II.   STATEMENT OF MATERIAL FACTS ........................................................... 3

III.  STANDARD OF REVIEW .............................................................................. 5

  A.   COUNT I – ALLEGED VIOLATION OF ERISA ......................................... 5

  B.   COUNT II – ALLEGED BREACH OF AN IMPLIED ORAL CONTRACT ................. 9

IV.   ARGUMENT .................................................................................................. 9

  A.   PLAINTIFF'S COUNT I ERISA CLAIM FOR SEVERANCE BENEFITS FROM THE
       PLAN MUST BE DISMISSED. ...................................................................... 9

    1.   THE TERMS OF THE PLAN CONFIRM NO SEVERANCE BENEFIT IS OWED
         TO PLAINTIFF. ......................................................................................... 9

      a.   Plaintiff Continued Employment at the Facility, Thus There was No Termination of
           Employment Under the Plan. .............................................................. 10

      b.   Plaintiff had Available to her as an Alternative to Continued Employment a Special
           Severance Benefit Arranged by Neenah. ............................................. 13

      c.   The Plan Administrator's Reasons for Denying Plaintiff's Claim for Severance
           Benefits Comport with the Plan's Purpose. ......................................... 15

    2.   THE PLAN ADMINISTRATOR'S CONCLUSION THAT NO SEVERANCE
         BENEFIT IS OWED TO PLAINTIFF IS WITHIN ITS BROAD DISCRETION AND, AT
         A MINIMUM, IS REASONABLE. .............................................................. 16

  B.   PLAINTIFF'S COUNT II CLAIM FOR BREACH OF AN IMPLIED ORAL
       CONTRACT SHOULD BE DISMISSED. ..................................................... 21

  C.   PLAINTIFF'S MOTION ON HER COUNT II CLAIM FOR BREACH OF AN
       IMPLIED ORAL CONTRACT MUST BE DENIED BECAUSE IT RELIES ON DISPUTED
       FACTS ........................................................................................................ 24

V.    CONCLUSION ............................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Thiokol Corp.*,
   231 F.3d 837 (11th Cir. 2000) .......................................................................8,19

*Anderson v. Ciba-Geigy Corp.*,
   759 F.2d 1518 (11th Cir. 1985) .........................................................................18

*Arby's, Inc. v. Cooper*,
   265 Ga. 240, 454 S.E.2d 488 (1995) ...................................................................3

*Blankenship v. Metropolitan Life Ins. Co.*,
   644 F.3d 1350 (11th Cir. 2011) .......................................................7, 8, 9, 16, 17

*Chilton v. Savannah Foods & Indus., Inc.*,
   814 F.2d 620 (11th Cir. 1987) .............................................................................6

*Coca-Cola Co. v. Lande*,
   No. 1:19-cv01741-WMR, 2019 WL 7493532 (N. D. Ga. Oct. 9,
   2019) ....................................................................................................................9

*Conkright v. Frommert*,
   559 U.S. 506 (2010).....................................................................................19, 20

*Crespo v. Unum Life Ins. Co. of Am.*,
   294 F.Supp.2d 980 (N.D. Ill. 2003).....................................................................6

*Daniel v. Northrop Grumman Space & Mission Systems Corp.*,
   2005 WL 2596869 (11th Cir. 2005) (unpublished op.).......................................19

*Doyle v. Liberty Life Assur. Co.*,
   542 F.3d 1352 (11th Cir. 2008) ...............................................................5, 6, 7, 8

*Edwards v. Central Georgia HHS, Inc.*,
   558 S.E.2d 815, 253 Ga. App. 304 (Ga. App., 2002)...................................22, 23

*Ellerin & Associates v. Brawley*,
    263 Ga. App. 860, 589 S.E.2d 626 (2003) ........................................................23

*Farley v. Benefit Trust Life Ins. Co.*,
    979 F.2d 653 (8th Cir. 1992) ...............................................................15

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)......................................................................6, 7, 19

*Lacey Mills, Inc. v. Keith*,
    183 Ga.App. 357, 359 S.E.2d 148 (1987) ...................................................22, 23

*Lann v. Metro. Life Ins. Co.*,
    371 F. Supp. 3d 1185 (N.D. Ga. 2019) ...................................................5

*McInvale v. Met. Life Ins. Co.*,
    2009 WL 2589521 ...............................................................................5

*Metropolitan Life Ins. Co. v. Glenn*,
    554 U.S. 105 (2008).............................................................................7

*Moreno v. Strickland*,
    255 Ga. App. 850, 567 S.E.2d 90 (2002) ...........................................................23

*Pullman Standard*
809 F.2d 1495 (11th Cir. 1987) ................................................................. 18

*Slagle v. Life Insurance Company of North America*,
    2012 WL 13075228 (N.D. Ga., 2012) ................................................................15

*Speed v. Muhanna*,
    274 Ga. App. 899, 619 S.E.2d 324 (2005) ...........................................................23

*Townsend v. Delta Family-Care Disability and Survivorship Plan*,
    295 Fed. Appx. 971 (11th Cir. 2008)...................................................................5

*Williams v. BellSouth Telecomms, Inc.*,
    373 F.3d 1132, 1138 (11th Cir. 2004) ...............................................................7

*World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*,
   695 S.E.2d 6 (Ga. 2010) .......................................................................15

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ...........................................................................6

Code section................................................................................................12

Code Section 409A ..........................................................................10, 12, 13

ERISA ...............................................................................................*passim*

U.S. Code § 1367(c)(3) ..............................................................................24

**Other Authorities**

2016-28 I.R. ...............................................................................................11

Rule 52(a).....................................................................................................6

Rule 52(a)(1)..............................................................................................5, 6

Rule 56 .......................................................................................................5, 6

Treasury Regulations Section 1.409A–1(h)(4)..................................11, 13

# I.  <u>INTRODUCTION AND OVERVIEW</u>

Defendant Neenah Paper, Inc. ("Neenah") properly denied Plaintiff's claim for severance benefits, and her Motion should be denied. When Neenah negotiated the sale of its Brattleboro, VT manufacturing facility, where Plaintiff was employed as a financial manager, it contractually required the buyer of the facility to continue to employ Plaintiff. Neenah also contractually required the buyer to offer Plaintiff severance pay if it did not continue her employment. Thus, while the owner of the facility changed, Neenah ensured that Plaintiff would have either continued, uninterrupted employment at the Brattleboro facility, or severance pay from the buyer. Ultimately that severance alternative did not come into play because the buyer offered Plaintiff continued employment at the facility and she accepted it. As such, Plaintiff essentially seeks to double dip—by remaining employed *and* demanding severance.

Neenah's Plan Administrator denied Plaintiff's claim for severance benefits based on proper interpretation of its severance plan ("Plan"). It determined that she did not suffer a loss of employment under the terms and intent of the Plan, and even if she did, the terms precluded her claim for severance pay because Neenah arranged for her to receive a "special severance package" in the event she ultimately became unemployed.  This interpretation was correct, and Plaintiff's claim fails.

Even if this Court were to interpret the Plan differently, Plaintiff's claim for severance benefits still must be dismissed because the Plan Administrator's interpretation and conclusion was reasonable. Under the deferential standard of review, the Plan Administrator's denial decision should not be disturbed because it is not arbitrary and capricious. Thus, as to Plaintiff's Count I claim for severance benefits, this Court should not only deny Plaintiff's motion but should enter judgment for Neenah and dismiss the claim.

As to Plaintiff's Count II, the Plan Administrator also properly denied Plaintiff's claim for a cash-out payment of unused vacation time because the severance Plan provides no vacation-related benefits, and alleged oral statements cannot by law amend or otherwise supersede the written terms of the Plan. Plaintiff now seeks to re-package her vacation pay claim as a common law, implied oral contract claim. But that too should be dismissed because Neenah's long-standing, written vacation policy was a "use it or lose it" policy by which any vacation time not taken by year end expires with no carry over to the next year and no cash-out payment. Plaintiff could have taken vacation time at any time in 2018, including December, or November, or October, but chose not to. As of the close of business on December 31, 2018, any prior vacation pay benefit available to her expired per the express and clear terms of the long-standing vacation time-off policy. Alleged

comments to the contrary cannot amend or supersede the written terms of the benefit policy, and any alleged "reliance" on such oral statements is per se unreasonable. Thus, Plaintiff's Count II implied contract claim fails and should be dismissed. Furthermore, Plaintiff's motion for summary judgment on Count II must be denied because Defendant disputes that oral representations were made as Plaintiff alleges. Accordingly, if Count II is not dismissed, Defendant should be permitted discovery on Plaintiff's disputed allegations.

## II. <u>STATEMENT OF MATERIAL FACTS</u>

Exclusively to rule on Plaintiff's Motion for Summary Judgment on Plaintiff's Count I ERISA claim for severance benefits, these material facts alleged by Plaintiff are assumed to be true and treated as undisputed:

- Throughout 2018 Woodcock was employed in a salaried, financial-related position at the Brattleboro, VT facility (the "Facility") which was then owned by Neenah (Dkt. No. 6-2, ¶6);

- Neenah maintained the Neenah Salaried Severance Plan ("Plan") to provide certain salaried employees severance benefits in certain situations, as described in the Plan (Dkt. No. 6-2, ¶¶1-2);

- In the Fall of 2018, Neenah contracted to sell the assets of the Facility to Long Falls Paperboard, LLC ("Long Falls") (Dkt. No. 6-2, ¶¶17-18);

- The November 13, 2018 Purchase Agreement between Neenah and Long Falls required Long Falls to either offer employment to Facility employees, or pay severance obligations owed to any such employee not offered

continued employment (Dkt. No. 6-2, ¶21; *see also* Armstrong Decl., at pp. 2-3, ¶8; Dkt. No. 6-5, at pp. 18-19, § 5.3(c));

- Long Falls offered continued employment to Plaintiff, Plaintiff accepted that offer and continued in her employment in a finance role at the Facility (Dkt. No. 6-2, ¶¶24, 28);

- The sale transaction closed on December 31, 2018 (Dkt. No. 6-2, ¶18);

- Beginning on January 2, 2019, the first business day after the sale and the national New Year's Day holiday, Plaintiff continued in employment in a finance role at the Facility (Dkt. No. 6-2, ¶24).

Regarding Plaintiff's Count II claim for breach of an implied oral contract for a year-end cash payout of unused vacation time, these undisputed facts require denial of Plaintiff's motion and entry of judgment for Defendant dismissing the claim:

- In 2018, Neenah offered salaried employees, including Woodcock, the opportunity to take paid vacation time off, and this vacation benefit was governed by the written terms of Neenah's "Time Off Policy" (Armstrong Decl., at p. 5, ¶19 and Exh. 7);

- The Policy extinguishes any vacation pay opportunity not used by the employee by year end (Armstrong Decl., at Exh. 7, p. 2);

- In 2018, Woodcock choose not to use all the vacation time available to her and Neenah did not prohibit Woodcock from taking more vacation time off than she did (Armstrong Decl., at p. 5, ¶19, Exh. 7);

- Any vacation benefits available to Woodcock in 2018 that were not utilized were extinguished under the terms of the Time Off Policy (Armstrong Decl., at p. 5, ¶19).

4

If the Court declines not to enter judgment for Neenah dismissing Plaintiff's Count II claim for breach of an oral contract, these facts are disputed and require denial of Plaintiff's Motion and further litigation of Count II:

- Neenah never promised nor represented to Plaintiff in the context of the Facility sale to Long Falls it would pay out to her all unused vacation time if she remained employed until closing the sale (Schwartz Decl., at p. 2, ¶¶6-8; Armstrong Decl., at p. 5, ¶¶18-19.).

### III.    <u>STANDARD OF REVIEW</u>

**A.    COUNT I – ALLEGED VIOLATION OF ERISA**

In an ERISA denial of benefits case, Eleventh Circuit case law "is settled that we are limited to only those documents that were before the administrator." *Townsend v. Delta Family-Care Disability and Survivorship Plan*, 295 Fed. Appx. 971, 976 (11th Cir. 2008). Plaintiff has filed a Rule 56 motion for summary judgment, however Courts in the Eleventh Circuit routinely hold that Rule 52(a)(1)—not Rule 56—provides the appropriate vehicle for judgment on the administrative record in ERISA cases. *Lann v. Metro. Life Ins. Co.*, 371 F. Supp. 3d 1185, 1195 (N.D. Ga. 2019); *McInvale v. Met. Life Ins. Co.*, 2009 WL 2589521, *1 n.2 (M.D. Ga. Aug. 18, 2009) (holding that "when a decision is based on the agreed-upon administrative record, judicial economy favors using findings of fact and conclusions of law, not Fed. R. Civ. P. 56, to avoid an unnecessary step that could

result in two appeals rather than one"); *Doyle v. Liberty Life Assur. Co.*, 542 F.3d 1352, 1363 n. 5 (11th Cir. 2008). This procedure promotes judicial economy, because under Rule 52(a), the court "can decide the case and resolve any fact questions," and a trial on the papers "is certain to result in a decision for one party rather than present the risk of a non-decision if the cross-motions for summary judgment are both denied." *Crespo v. Unum Life Ins. Co. of Am.*, 294 F.Supp.2d 980, 991-92 (N.D. Ill. 2003); *see also Chilton v. Savannah Foods & Indus., Inc.*, 814 F.2d 620, 623 (11th Cir. 1987).

Thus, although Plaintiff asks the Court to decide this case under Fed. R. Civ. P. 56, the Court should award judgment in Defendant's favor under Fed. R. Civ. P. 52(a)(1), which provides: "In an action tried on the facts without a jury…the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of evidence or may appear in an opinion or a memorandum of decision. . . ."[1]

The Supreme Court discussed the appropriate standard of review in 29 U.S.C. § 1132(a)(1)(B) actions challenging a denial of benefits based on a plan

---

[1] Alternatively, should the Court disagree with this approach, Defendant requests that the Court enter summary judgment in its favor under Fed. R. Civ. P. 56, because there are no genuine issues of fact for trial and Defendant is entitled to judgment as a matter of law.

interpretation in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). The

Eleventh Circuit then developed a six-step framework for analyzing ERISA claims

and administrators' decisions resting on the guidance provided in *Firestone* and

subsequent decisions of the Supreme Court of the United States interpreting ERISA.

*Blankenship v. Metropolitan Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011);

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *Firestone*, 489 U.S. 101.

The framework is deferential to the plan administrator and is:

(1) Apply a *de novo* standard to determine whether the denial decision was "wrong"; if it is not, end the inquiry and affirm the decision.
(2) Determine whether the administrator was vested with discretion in reviewing claims; if not, end the inquiry and reverse the decision.
(3) If the administrator's decision was "*de novo* wrong" and the administrator was vested with discretion, determine whether "reasonable" grounds supported the decision.
(4) If no reasonable grounds existed, end the inquiry and reverse the decision; if reasonable grounds existed, determine if the administrator operated under a conflict of interest.
(5) If there is no conflict, end the inquiry and affirm the decision.
(6) If there is a conflict, the conflict should be considered in determining whether the decision was arbitrary and capricious.

*Doyle*, 542 F.3d at 1356 *(*citing *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d

1132, 1138 (11th Cir. 2004)). Under Eleventh Circuit precedent, the burden remains

at all times with the plaintiff to prove entitlement to plan benefits under ERISA, even where a conflict of interest exists. *Blankenship,* 644 F.3d at 1354.[2]

The six-factor approach essentially boils down to two steps:  First, courts "must determine the legally correct interpretation of the disputed plan provision." *Adams v. Thiokol Corp.*, 231 F.3d 837, 843 (11th Cir. 2000). If the court determines that the plan administrator's interpretation was right, the inquiry ends here. However, even if the court determines that the plan administrator's interpretation was "wrong," where the administrator is vested with discretion in denying benefits, the second step for the reviewing court requires applying the arbitrary and capricious standard to determine whether defendant's decision to deny benefits was

---

[2] Plaintiff's argument for a "heightened" arbitrary and capricious standard of review, with a burden of proof shifting to Neenah, because the Plan pays severance benefits from Neenah's assets, is both incorrect and immaterial. (Pl. Br. at 3-4.)  In *Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir. 2008), the Eleventh Circuit did away with the "heightened" standard of review leaving only *de novo* and arbitrary and capricious review. *Doyle* held "that the existence of a conflict of interest should merely be a factor for the district court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Id.* No Eleventh Circuit case after *Doyle* rejected a plan administrator's denial of a benefits claim on the basis of a conflict of interest derived from the fact that the plan's benefits were paid from the employer's general assets.  Furthermore, the alleged conflict of interest here is immaterial, if any exists, given that Plaintiff's claim for 26 weeks of severance pay represents an infinitesimal fraction of the Company's assets. With no proof of wrong doing or violations of rules or protocols by the Plan Administrator, that the Plan pays benefits from Neenah's general assets is immaterial.

"reasonable." *Blankenship*, 644 F.3d at 1355. If the decision is reasonable, even if

"wrong," judgment must be entered for the defendant. *See id.*

## B. COUNT II – ALLEGED BREACH OF AN IMPLIED ORAL CONTRACT

In its Order granting a motion for summary judgment in *Coca-Cola Co. v.*

*Lande,* No. 1:19-cv01741-WMR, 2019 WL 7493532, at *2, (N. D. Ga. Oct. 9, 2019)

(citations omitted), this Court articulated the applicable legal standard:

> Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing the absence of a genuine issue of material fact, looking at the evidence in the light most favorable to the non-movant. After a motion for summary judgment has been properly supported, the non-movant must present evidence "from which a jury might return a verdict in his favor" and that demonstrates the presence of "a genuine issue of fact that requires a trial."

## IV. ARGUMENT

## A. PLAINTIFF'S COUNT I ERISA CLAIM FOR SEVERANCE BENEFITS FROM THE PLAN MUST BE DISMISSED.

### 1. THE TERMS OF THE PLAN CONFIRM NO SEVERANCE BENEFIT IS OWED TO PLAINTIFF.

Plaintiff's Count I claim for severance benefits must be dismissed because the

Plan Administrator properly concluded that Plaintiff's continued employment at the

Facility as arranged by Neenah was not a "Termination of Employment" under the

Plan. Moreover, even if Plaintiff had a "Termination of Employment," she was rendered ineligible for severance benefits by an express provision of the Plan which renders a Plan Participant ineligible if their employment is terminated as part of a "Group Termination" for which the Company offers a "special severance package." As discussed next, these two reasons are independent, and either requires Plaintiff's Count I to be dismissed.

> ### a. Plaintiff Continued Employment at the Facility, Thus There was No Termination of Employment Under the Plan.

The Plan Administrator properly denied Plaintiff's claim for severance benefits based on its conclusion she did not experience a "Termination of Employment" as that term is defined and intended in the Plan. Plaintiff argues that because she stopped receiving her pay from Neenah as of the sale closing, and instead received her pay from the Facility's new owner, she had a "Termination of Employment" and thus was eligible for Severance Pay under the Plan.  While true that Plaintiff's employment by Neenah ended on December 31, 2018, that ending is not a "Termination of Employment."   Rather, Plan Section 2.24 defines "Termination of Employment" as a "Participant's 'separation from service' within the meaning of Code Section 409A that also is a complete cessation of the

Participant's status as a common law employer of a Participating Employer and all Affiliates." (Internal quotes in original.)

Treasury Reg. Sec. 1.409A-1(h)(1) defines "separation of services" as a "termination of employment," of which occurs when "facts and circumstances indicate that the employer and employee reasonably anticipated that no further services would be performed after a certain date." However, subsection (h)(4) is an exception to this general definition that applies in asset purchase transactions, like Neenah's sale of the Facility. Subsection (h)(4) states:

> (4) Asset purchase transactions. Where as part of a sale or other disposition of assets by one service recipient (seller) to an unrelated service recipient (buyer), a service provider of the seller would otherwise experience a separation from service with the seller, the seller and the buyer may retain the discretion to specify, and may specify, whether a service provider providing services to the seller immediately before the asset purchase transaction and providing services to the buyer after and in connection with the asset purchase transaction has experienced a separation from service for purposes of this paragraph (h) . . . .

Treasury Reg. Sec. 1.409A–1(h)(4) thus provides for total discretion by the buyer and seller to determine whether a "separation from service" occurred for service providers (*i.e.*, employees) of the seller. The IRS in interpretive guidance has reasoned that this provision accounts for the reality that although a sale of the business results in a change of ownership, "in a typical asset transaction, the

11

employees often experience no change in the type or level of services they provide."
2016-28 I.R.B. 15 (2016).

Here, the Plan Administrator determined that by agreeing that the buyer would offer and continue the employment of Neenah's Facility employees, including Plaintiff, the parties specified and *ensured* these employees would not incur a "separation from service." Without a "separation from service" per Section 409A in this asset transaction, there is no "Termination of Employment" as defined in Section 2.24 of the Plan.  With no "Termination of Employment," there is no eligibility for severance pay. (Dkt. No. 6-5, at p. 15, § 3.2.) This is what the Plan Administrator told Plaintiff in its November 25, 2019 letter denying her appeal (Dkt. No. 6-5, at p. 43-44), and this reflects a correct interpretation of the Plan's technical definition of the operative term "Termination of Employment."

Plaintiff's argument that application of Code Section 409A should be ignored here because it largely addresses the issue of whether a deferred compensation plan "should be taxed" is incorrect. Code Section 409A must be interpreted and applied by the Plan Administrator to determine if Plaintiff's circumstances constitutes a "Termination of Employment" because that section is incorporated in the Plan's definition of that operative term.  Plan Section 2.24's definition of "Termination of Employment" requires there be a "separation of service" per Code Section 409A,

and that Code section confirms that this is subject to the wishes of a seller and buyer in an asset transaction. The seller (Neenah) and the buyer (Long Falls) exercised the discretion contemplated by Treasury Regulations Section 1.409A–1(h)(4) when they provided for Plaintiff to continue her employment uninterrupted after the sale of the business closed on December 31, 2018. These circumstances are specifically contemplated by the Plan through its incorporation of Section 409A, and this precludes Plaintiff's ongoing employment at the Facility with its new owner from constituting a "Termination of Employment" under the Plan.

> **b.      Plaintiff had Available to her as an Alternative to Continued Employment a Special Severance Benefit Arranged by Neenah.**

Besides the dispositive reason discussed above, the Plan Administrator also properly denied Plaintiff's claim for severance benefits based a second, independent reason. Even assuming she had experienced a "Termination of Employment" as that term is defined and intended in the Plan, Plaintiff was ineligible for severance pursuant to Section 3.2(E). That Section provides that no Severance Pay shall be paid to any Participant:

> (E)   whose employment is terminated as part of a Group Termination for which the Company offers a special severance package in connection with that Group Termination…

(Dkt. No. 6-5, at p. 15, § 3.2(E).)

The end of Plaintiff's employment with Neenah occurred as part of a "Group Termination," defined by the Plan as:

> The termination of employment of Employees in the event of the following circumstances:
>
> (A) any separation or reorganization of the Employer including…a sale of assets.

(Dkt. No. 6-5, at p. 12-13, § 2.12.) Neenah's sale of the Facility assets led to the end of its employment relationship with the group of its former employees there, including Plaintiff. Plaintiff does not and cannot dispute there was a "Group Termination" of Neenah's Facility employees. She concedes and argues the point at the outset of Section F of page 22 of her brief.

The Plan Administrator concluded that the Section 3.2(E) exclusion applied to Plaintiff who, like her Facility coworkers, changed employers with the sale of Facility assets, because Neenah had arranged for a "special severance package" in relation to that Group Termination. Specifically, Neenah contracted with the buyer to pay Plaintiff severance if the buyer chose not to continue her employment. Because Neenah made this special severance package available to Plaintiff, Section 3.2(E) precludes her from double-dipping eligibility for both that special severance

package *and* severance pay under the Plan. This is a correct interpretation and application of the Plan and as such the Court must leave it undisturbed.[3]

### c. The Plan Administrator's Reasons for Denying Plaintiff's Claim for Severance Benefits Comport with the Plan's Purpose.

The Plan Administrator's denial of Plaintiff's claim for severance benefits both comports with and effectuates the purpose of the Plan. As it explained in the November 25, 2019 letter to Plaintiff denying her appeal, the Plan Administrator confirmed the "purpose of the Plan is to provide *replacement income* to employees who experience involuntary termination of employment and are expected to

---

[3] While acknowledging she has no supporting legal authority, Plaintiff argues that Neenah waived arguments relating to the "special severance plan" exclusion of Section 3.2(E) of the Plan because it first explained those in its denial of her administrative appeal rather than in its initial claim denial. (Dkt, No. 6-3, at 17.) But this argument is misplaced because waiver does apply to such denial decisions. *Slagle v. Life Insurance Company of North America*, 2012 WL 13075228, at *14 (N.D. Ga., 2012) (defendant on a claim for benefits under an ERISA plan need not exhaust all reasons for denying coverage in pre-litigation claims process). *See also, Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 660 (8th Cir. 1992) (holding that defendant may rely in benefits claims litigation on plan provisions not cited at time it initially denied coverage); *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 695 S.E.2d 6, 9 (Ga. 2010) ("risks not covered by the terms of an insurance policy ... [are] normally not subject to the doctrine of waiver," unless insurer assumes defense of an action without a reservation of rights). Moreover, even if this reason for denial were subject to waiver, it was not waived. In its September 3, 2019 initial claim denial letter, the Plan Administrator quoted from Section 3.2(e) of the Plan and explained that "[a]s part of the sale agreement the Purchaser agreed to pay for the severance obligation of any Company Employee not offered employment." (Dkt. No. 6-5, at p. 30.)

experience a period of unemployment."  (Dkt. No. 6-5, at p. 43 (citing Section 1.4

at Dkt. No. 6-5, at p. 10.)) Because Plaintiff accepted and continued employment in

a finance role at the Facility as Neenah arranged, she did not experience involuntary

termination of employment with an expected period of unemployment.  In fact, she

had no gap in income and therefore no need for "replacement income" in the form

of severance benefits from the Plan. And as set forth above, she suffered no

"Termination of Employment" for purposes of this Plan.  Nevertheless, had she

suffered a termination and expected period of unemployment, the "special"

severance package arranged by Neenah would have provided the appropriate

severance "replacement income" pursuant to the Plan.

The Plan Administrator's stated reasons for denying Plaintiff's appeal for

benefits fulfills the purpose of the Plan and further confirms its correct

interpretations of the Plan.  The Plan Administrator's decision should thus be

affirmed on *de novo* review. Plaintiffs' Count I ERISA claim for severance benefits

must be dismissed.

2. <u>THE PLAN ADMINISTRATOR'S CONCLUSION THAT NO
SEVERANCE BENEFIT IS OWED TO PLAINTIFF IS WITHIN ITS
BROAD DISCRETION AND, AT A MINIMUM, IS REASONABLE.</u>

Assuming upon its *de novo* review the Court concludes that both of the Plan

Administrator's reasons for denying Plaintiff's claim for severance benefits were

wrong, the Court nonetheless must dismiss Plaintiff's Count I Claim because the Plan Administrator's interpretations of the Plan are not arbitrary and capricious. *Blankenship*, 644 F.3d at 1355.

The Plan vested the Plan Administrator with full and sole discretion to construe the Plan. (Dkt. No. 6-5, p. 17-18, § 5.3.) The Plan also vested the Plan Administrator with full and sole discretion to determine eligibility for benefits. (Dkt. No. 6-5, p. 18, § 5.9.) The Plan also confirms that any such determinations by the Plan Administrator regarding eligibility for benefits, made in its sole discretion, "shall be final and conclusive as to all Eligible Employees and other persons claiming rights under the Plan." (Dkt. No. 6-5, p. 17-18, § 5.9; *see also* at p. 18, § 5.3 ("All rules and decisions of the Plan Administrative Committee…shall be conclusive and binding on all persons affected by them.").) Thus, the Plan Administrator's denial decision must receive deferential review and must be affirmed even if "wrong" so long as there is any reasonable basis for it.

Both of the Plan Administrator's stated rationales for denying Plaintiff's severance benefits claim are based in reason, and thus Plaintiff's Count I must be dismissed even if the Court concludes both of the rationales are wrong. The Plan Administrator interpreted and applied the operative terms as defined by the Plan, such as "Termination of Employment," and "Group Termination," both by reference

to the Plan's specific definition of those terms, and in a manner consistent with its determination of the purpose of the Plan ("The purpose of the Plan is to provide temporary income replacement…").  (Dkt. No. 6-5, at p. 10, § 1.4.)

The only 11th Circuit case to which Plaintiff cites to support her contention she is owed severance benefits under the Plan's terms is *Pullman Standard*, 809 F.2d 1495 (11th Cir. 1987). But reliance on *Pullman Standard* is misplaced because the ERISA plan in that case is distinguishable from the Plan here. In *Pullman Standard*, the plan terms provided that entitlement to severance plan benefits was broadly triggered by virtually any "involuntary termination" event. *Id.* at 1498. In holding the plan administrator improperly denied plaintiff severance benefits, the court explained that "[t]he policy does not provide any exceptions to [severance benefits] eligibility if the corporate ownership changes and Pullman's employees obtain jobs with the new corporation." *Id.* The *Pullman Standard* court underscored that its holding was bound by the specific terms of the plan and that  if an exception existed, like that in *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1521 (11th Cir. 1985), the court would be bound to uphold the plan administrator's decision. *Id.*

Unlike the plan in *Pullman Standard*, the Plan here specifically contemplates exceptions to eligibility for an individual losing employment, and utilizes a unique definition for a "Termination of Employment" event. A plan administrator's

18

decision to deny severance benefits to employees continuing in employment with a successor employer have been upheld by the 11th Circuit. *Adams v. Thiokol Corp.*, 231 F.3d 837, 846 (11th Cir. 2000) ("[W]hen terminated employees are immediately rehired by a departing [employer's] successor under terms that are comparable to those received from their initial employer, the employees are not entitled to severance benefits."); *Daniel v. Northrop Grumman Space & Mission Systems Corp.*, 2005 WL 2596869, at *2 (11th Cir. 2005) (unpublished op.) (affirming decision to deny severance benefits to terminated employees because the plan stated that severance benefits will not be paid in the case of "[f]acility sale, where employees are offered and accept continued employment.").

The deferential standard of review mandated by the Supreme Court for over 30 years since it issued *Firestone Tire & Rubber* is powerful. Over 20 years after its *Firestone Tire & Rubber* decision, the Supreme Court explained the important role played by a deferential court review of decisions of benefit plan administrators. In *Conkright v. Frommert*, 559 U.S. 506, 509 (2010), the Supreme Court explained that ERISA represents a "'careful balancing' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans," given that employers have no obligation to offer welfare benefits like severance. *Id.* at 517 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 215

19

(2004)). *Firestone* deference protects these interests by promoting efficiency (*i.e.*, encouraging dispute resolution through internal administrative proceedings rather than through litigation), by promoting predictability (*i.e.*, allowing an employer to rely on the expertise of plan administrators rather than the possibly inaccurate plan interpretations that might result from judicial review), and by promoting uniformity (*i.e.*, avoiding "a patchwork of different interpretations of a plan, like the one here, that covers employees in different jurisdictions"). *Id.* Thus, the *Conkright* Court concluded that the "careful balancing" on which ERISA is based is preserved by permitting an employer to grant primary interpretive authority over an ERISA plan to the plan administrator, and by courts deferring to that authority. *Id.* at 517-18.

Plaintiff cannot carry the burden to prove that the Plan Administrator's denial decision lacks any basis in reason.[4] Nor does she demonstrate that it is arbitrary. For example, she does not and cannot suggest, much less prove, the Plan has ever treated differently any other person who was similarly-situated to Plaintiff. Nor does she claim that the Plan Administrator ignored dispositive provisions of the Plan or skipped any Plan procedures or protocols for review of claims. She simply does not

---

[4] Plaintiff argues the Plan does not grant discretionary authority to the Plan Administrator to determine her eligibility for severance benefits in this circumstance. (Dkt. No. 6-3 at pp. 6-7.) Her argument is circular and wrong. The Plan grants full discretionary authority to the Plan Administrator in multiple provisions, such as Sections 5.3, 5.5 and 5.9.

like the outcome of the Plan Administrator's determination of her appeal because the denial precludes her from having it all – namely, continued employment and the severance benefits. Her desire for it all, however, does not make the Plan Administrator's rationale so arbitrary and capricious, so lacking in any reason, that a court would be justified in granting Plaintiff's motion and forcing this Plan to pay severance benefits. Following the Supreme Court's guidance on deferring to the discretionary authority of a plan administrator to interpret and apply the terms of an ERISA-covered benefits plan, this Court should defer to Neenah's denial decision and dismiss Plaintiff's Count I ERISA claim for benefits.

**B.  PLAINTIFF'S COUNT II CLAIM FOR BREACH OF AN IMPLIED ORAL CONTRACT SHOULD BE DISMISSED.**

In Count II of the Complaint, Plaintiff seeks three weeks of unused vacation pay.  Originally Plaintiff included this vacation pay in her claim for severance filed with the Plan Administrator, alleging it was "promised by Matthew Duncan and Renee Schwartz and required by the Plan."  (Dkt. No. 6-5, at p. 40.) The Plan Administrator denied the claim, as the vacation benefit is not subject to the Plan and alleged oral statements could not modify the terms of the Plan. (Dkt. 6-5, at p. 44.)

Plaintiff was forced to shift gears and now "acknowledges that her claim for vacation pay, *per se,* does not fall under the Plan." (Dkt. 6-3, at p. 24.) Thus, Plaintiff confirms this is a claim "pursuant to general breach of contract and equitable

principles *outside* of ERISA." *Id.* Nevertheless, this general implied contract claim must be dismissed as well because Plaintiff was then an at-will employee whose vacation benefit was governed by a written policy requiring the expiration of unused vacation at year-end, not by some implied contract created on alleged statements made orally.

Neenah's published vacation benefit policy since 2011 has explicitly mandated that "You must use all of your eligible vacation time by the end of each calendar year or any unused time will be forfeited." (Armstrong Decl., at p. 5, ¶19 and Exhibit 7). Any unused vacation time Plaintiff had at the end of the 2018 was thus forfeited and this claim should be dismissed on this basis alone.

To the extent Plaintiff argues that she was promised unused vacation pay, however, and thus implies an oral contract in conflict with the written policy was made, any such promises by an employer to an employee for future compensation are enforceable only when those promises are made at the beginning of employment. *Arby's, Inc. v. Cooper*, 265 Ga. 240, 454 S.E.2d 488 (1995); *Edwards v. Central Georgia HHS, Inc.*, 558 S.E.2d 815, 817, 253 Ga. App. 304, 306 (Ga. App., 2002) (affirming summary judgment for the employer on employee's breach of contract claim because promise for future bonus compensation was made during employment and was based on an indefinite formula). Therefore, a promise of a future change in

compensation in an at-will employment situation "is unenforceable since neither party is bound to continue performance under the contract at all." *See, e.g.*, *Lacey Mills, Inc. v. Keith*, 183 Ga.App. 357, 361(5), 359 S.E.2d 148 (1987) (holding that employer's oral promise to pay an annual pre-tax bonus of a certain percentage of profits made at the beginning of employment was not unenforceable because it was an executory promise of future compensation, but was unenforceable).

But even if an alleged compensation promise is made at the outset of employment, to be enforceable in contract a plaintiff must prove the parties actually reached agreement. Where the parties disagree that an agreement was reached, the agreement must be memorialized in writing to be enforceable. *Speed v. Muhanna*, 274 Ga. App. 899, 619 S.E.2d 324 (2005); *Ellerin & Associates v. Brawley*, 263 Ga. App. 860, 589 S.E.2d 626 (2003); *Moreno v. Strickland*, 255 Ga. App. 850, 567 S.E.2d 90 (2002). That should be especially true where the alleged oral agreement contradicts the written policy on the same issue. Here, as first stated in the Plan Administrator's appeal denial letter (Dkt. No. 6-5, at p. 42), reconfirmed in Neenah's answer to the complaint (Dkt. No. 13, at p. 17), and reconfirmed in Neenah's responses to Plaintiff's proposed statement of material facts (Defendant's Responses to Plaintiff's Statement of Material Facts, at pp. 3-7), the parties disagree there was any oral contract intended or created in relation to vacation benefits following the

23

sale of the Facility.  The absence of some written confirmation not only raises serious doubt as to any such promise made, but specifically prevents enforcement of such promises, particularly where they contradict the express, written terms of the applicable benefit policy. Plaintiff has never claimed that anyone prevented her from using her vacation benefit as mandated by the vacation policy.  She chose not to take vacation. Any vacation benefit she chose not to use by December 31, 2018 then expired according to the clear and express terms of the vacation benefit policy. Thus Plaintiff's claim for a vacation benefit that contradicts the mandates of the long-standing policy defining her vacation benefit must be dismissed.[5]

## C.   PLAINTIFF'S MOTION ON HER COUNT II CLAIM FOR BREACH OF AN IMPLIED ORAL CONTRACT MUST BE DENIED BECAUSE IT RELIES ON DISPUTED FACTS.

If this Court declines to dismiss Plaintiff's Count II claim for breach of an implied contract to pay cash for unused vacation benefits, Plaintiff's motion for

---

[5] This Court should exercise its discretion to not continue to exert jurisdiction over the state law contract claim of Count II.  There is no independent federal jurisdiction for Count II, only jurisdiction supplemental to the federal law claim asserted in Count I.  The supplemental jurisdiction statute confirms that upon the dismissal of "all claims over which it has original jurisdiction," a district court may decline to continue to exercise supplemental jurisdiction over a state law claim. 28 U.S. Code § 1367(c)(3).  The exercise of that discretion would be most appropriate here because Plaintiff's state law claim for three weeks of vacation pay should not compete for this Court's limited resources.

summary judgment nonetheless must be denied because it relies on material facts that are disputed. Renee Schwartz and Matthew Duncan each deny the representations Plaintiff attributes to them. (Schwartz Decl., at p. 2, ¶¶6-8; Duncan left Neenah, and discovery would be required to obtain his testimony denying he made the alleged statement.)   Neenah also denies that any such binding representation was made by any authorized management representative in relation to the actual sale. (*See* Armstrong Decl., at p. 5, ¶18.) As such, Plaintiff's motion must be denied so the parties can proceed to discovery regarding these disputed allegations in the ordinary course.

## V. <u>CONCLUSION</u>

Defendant respectfully requests that the Court deny Plaintiff's Motion for Summary in its entirety and enter judgment for Defendant dismissing the Complaint with prejudice.

Dated this 1st day of May, 2020.


Respectfully submitted,

/s/ *Deepa N. Subramanian*
Deepa N. Subramanian
*Georgia State Bar No. 278625*
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 4800

Bernard J. Bobber
*Pro Hac Vice*
WI State Bar No. 1015499
Christina L. Wabiszewski
*Pro Hac Vice*

25

Atlanta, Georgia 30303
Tel: (404) 881-1300
Fax: (404 870-1732
deepa.subramanian@ogletree.com

WI State Bar No. 1098928
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
1243 N. 10th Street, Suite 200
Milwaukee, WI  53205
Telephone:  (414) 239-6411
Facsimile:  (414) 755-8289
bernard.bobber@ogletree.com
christina.wabiszewski@ogletree.com

*ATTORNEYS FOR DEFENDANT*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GAYLE E. WOODCOCK,

     Plaintiff,

v.

NEENAH, INC.
formerly known as
NEENAH, INC.,

     Defendant.

Civil Action No.
1:20-CV-00068-WMR

## **CERTIFICATE OF SERVICE**

I certify that on May 1, 2020, I electronically filed a copy of the foregoing **Defendant's Brief in Opposition to Motion for Summary Judgment, Defendant's Responses to Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment, Defendant's Statement of Additional Facts in Opposition to Plaintiff's Motion for Summary Judgment, Declaration of Trevor Armstrong, and Declaration of Renee Schwartz,** , with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all parties and attorneys of record who have registered with the Court's electronic filing system and that a copy was mailed to Plaintiff, proceeding pro se, via U.S. Mail, with adequate postage, at the following address:

27

Gayle E. Woodcock
69 Toby Hill Road
South Newfane, Vermont 05351

I further certify that this brief complies with the font and type requirements of

Local Rule 5.1 and that it has been prepared in Times New Roman 14 point font.

_/s/  Deepa N. Subramanian_
Deepa N. Subramanian
Georgia Bar No. 278625

42717060.1